ROBERT J. PARKS (SBN 103014)
rparks@parksandsolar.com
KEITH R. SOLAR (SBN 120741)
ksolar@parksandsolar.com
PARKS AND SOLAR LLP
501 West Broadway, Suite 1540
San Diego, CA 92101
Telephone:   619 501 2700
Fax:              619 501 2300

JESSICA GRANT (SBN 178138)
jgrant@venable.com
AMIT RANA (SBN 291912)
arana@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111

Attorneys for Defendants
TRI UNION SEAFOODS LLC, dba Chicken of the Sea International, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *Duggan, et al., v. Tri-Union Seafoods LLC, dba Chicken of the Sea International, Inc.* | Case No. 4:19-cv-02562-JST <br><br> **DEFENDANT TRI-UNION SEAFOODS, LLC DBA CHICKEN OF THE SEA INTERNATIONAL, INC.'S** <br><br> **(1) NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND** <br><br> **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** <br><br> DATE:              October 9, 2019 <br> TIME:               2:00 p.m. <br> COURTROOM:   6 (Oakland Courthouse) <br> JUDGE:             Hon. Jon S. Tigar |

1  **TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE** that on October 9, 2019, at 2:00 p.m., or as soon thereafter as the

3  parties may be heard before the Honorable Jon S. Tigar, United States District Court, Northern

4  District of California, Courtroom 6 (Oakland Courthouse), located at 1301 Clay Street, Oakland,

5  California 94612, Defendant Tri-Union Seafoods, LLC dba Chicken of the Sea International, Inc.

6  ("Defendant") will and hereby does move to dismiss with prejudice the First Amended Complaint of

7  Plaintiffs Tara Duggan, Lori Myers, Angela Cosgrove, Robert Mcquade, Colleen Mcquade, Anthony

8  Luciano, Lori Luciano, Robert Nugent, James Borruso, Fidel Jamelo, Jocelyn Jamelo, Ken Petrovcik,

9  Avraham Isac Zelig, Amar Mody, Heena Mody, and Megan Kiihne ("Plaintiffs") pursuant to Rules

10  8(a), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and as more fully set forth

11  in the accompanying Memorandum of Points and Authorities, on the grounds that Plaintiffs lack

12  standing under Article III of the United States Constitution, fail to state a claim upon which relief can

13  be granted, and fail to plead their fraud-based claims with sufficient particularity.

14  This Motion is based upon this Notice of Motion, the attached Memorandum of Points and

15  Authorities, the Request for Judicial Notice filed concurrently herewith, the pleadings, exhibits

16  herein, and upon such other argument as may be presented at the hearing.

17

18  DATED:  August 30, 2019          PARKS & SOLAR, LLP

19

20                                   By: _____
                                          ROBERT J. PARKS
21

22

23                                   VENABLE LLP

24                                   JESSICA GRANT
                                     AMIT RANA
25
                                     Attorneys for Defendant
26                                   *Tri-Union Seafoods LLC dba Chicken of the Sea*
                                     *International*
27

28                                              1

---

NOTICE OF MOTION AND MOTION TO DISMISS            CASE NO. 4:19-cv-02562-JST

Table of Contents

Page

I.      STATEMENT OF ISSUES TO BE DECIDED  ..................................................1

II.     INTRODUCTION ...........................................................................................1

III.    BACKGROUND ............................................................................................3

IV.     PLAINTIFFS' ALLEGATIONS......................................................................4

V.      LEGAL STANDARD.....................................................................................5

VI.     COMPREHENSIVE FEDERAL LAW REGARDING DOLPHIN SAFE LABELS.........5

        A.      THE MMPA AND THE DPCIA  ........................................................5

                1.      Federal Law Requires Certification, Tracking and Verification Procedures 6

                2.      Enforcement of the MMPA and the DPCIA Are Delegated to Federal
                        Administrative Channels.....................................................................7

                        a.      Enforcement of the MMPA .........................................7

                        b.      Enforcement of the Dolphin Safe Labeling Standard .......................7

VII.    ARGUMENT         ............................................................................................9

        A.      PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED...................................9

                1.      Plaintiffs' Claims are Field Preempted Because Congress Occupies the Field
                        of "Dolphin Safe" Tuna Fishing Operations...............................................10

                2.      Plaintiffs' Claims are Conflict Preempted Because They Attempt to Enforce
                        the DPCIA and Challenge a Federal Standard for which Congress Intended
                        Uniformity..............................................................................................12

                        a.      Uniform Federal Law Compliance ................................14

        B.      PLAINTIFFS LACK ARTICLE III STANDING ..................................................16

        C.      THE FAC'S FIRST CAUSE OF ACTION UNDER RICO IS FATALLY
                DEFECTIVE AND SHOULD BE DISMISSED.....................................................17

i

1.    Plaintiffs' RICO cause of action fails because there is no private right of action under the DPCIA or MMPA ............................................................. 18

2.    Plaintiffs' fail to allege the existence of an illegal enterprise created for a fraudulent or unlawful purpose ................................................................. 19

a.    Plaintiffs' have not, and cannot, allege a fraudulent purpose ........ 20

D.    PLAINTIFFS HAVE FAILED TO PLAUSIBLY SUPPORT THEIR GENERAL ALLEGATIONS OF FRAUD AND RICO UNDER RULE 9(B) ........................ 21

VIII.    CONCLUSION ............................................................................................................ 23

ii

Table of Authorities

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..................................................................... 18

*Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378 (2015).......................... 13,15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 5

*Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000)......................................... 20

*Boyle v. United States*, 556 U.S. 938 (2009) .................................................................... 20

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001)............................... 14,15

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ............................................................. 16

*City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973) ...................................... 17

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)............................................. 10

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)...................................... 17

*Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064 (N.D. Cal. 2003) ................................ 15

*Fouke v. Mandel*, 386 F.Supp. 1341, 1360 (D. CO 197)............................................... 12,15

*Fraker v. KFC Corp.*, Case No. 06-C-1284, 2007 WL 1296571, at *3 (S.D. Cal. April 30, 2007).. 22

*Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000)............................................ 13,16

*Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003)......................... 22

*Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *10-*11 ........................................ 22

*In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009)................ 20

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ................................................ 21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prods. Liab. Litig.*,

 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ......................................................................... 21

*In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074 (C.D. Cal. 2017)............................. 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................ 5,21,22

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)..................................................... 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................... 5,16

*Marantette v. Abbot Laboratories*, 886 F.3d 112 (2nd Cir. 2018)...................................... 14

iii

*McCulloch v. PNC Bank*, 298 F.3d 1217 (11th Cir. 2002)................................................... 19

*Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990)....................................... 11

*People of Togiak v. U.S.*, 470 F.Supp. 423 (1979) ........................................................... 15

*Puente Arizona v. Arpaio*, 821 F.3d 1098 (9th Cir. 2016)...................................................9,12

*Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978)........................................................ 1011

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ........................................................ 19

*Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016)................................................ 20

*Stengel v. Medtronic, Inc.*, 704 F.3d 1224 (9th Cir. 2013) ..................................................... 13

*Strahan v. Coxe*, 127 Fed.3d 155 (1st Cir. 1997) ...........................................................7,18

*Tylka v. Gerber Products Co.*, Case No. 96-C-1647, 1999 WL 495126,
   at *8 (N.D. Ill. July 1, 1999).......................................................................... 22

*UFO Chuting of Hawaii, Inc. v. Young*, 380 F.Supp.2d 1166 (D. Hawaii 2005)............................... 10

*United States v. Locke*, 529 U.S. 89 (2000)............................................................... 10

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ...................................... 5, 21

*Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3 (C.D. Cal. Jan. 28, 2016) ...................... 20

*Woodell v. Expedia Inc.*, 2019 WL 3287896, at *8 (W.D. Wash. July 22, 2019)............................ 21

*Woolsey v. J.P. Morgan Ventures Energy Corp.*, 2015 WL 6455571,
   at *8 (S.D. Cal. Oct. 26, 2015).......................................................................... 19

**Other Authorities**

15 U.S.C. §45.............................................................................................. 8
15 C.F.R. §§904.1(c)(11), (22).............................................................................. 8
16 U.S.C. §1361............................................................................................ 5
16 U.S.C. §1361(5) and (6).................................................................................. 5
16 U.S.C. §1377(a)......................................................................................11,15
16 U.S.C. §1379(a).......................................................................................... 7
16 U.S.C. §1385............................................................................................ 1
16 U.S.C. §1385(d)(1)....................................................................................... 6
16 U.S.C. §1385(e)........................................................................................7, 15
16 U.S.C. §1385(f)(6)....................................................................................... 8
16 U.S.C. §§1858-1861 ..................................................................................8, 15
16 U.S.C. §§1862g(a), (b)(2)................................................................................ 12
16 U.S.C. §1826g(a)-(b)................................................................................7,8,15
18 U.S.C. §1962(c)-(d)...................................................................................... 1

iv

50 C.F.R. § 216.90 ...................................................................................................... 1,6
50 C.F.R. §216.92 ........................................................................................................ 15
50 C.F.R. §§216.93 ................................................................................................... 8,15
50 C.F.R. §216.93(d) ..................................................................................................... 8
50 C.F.R. §216.93(d)(1) ................................................................................................ 8
50 C.F.R. §§216.93(d)(i), (d)(ii), (e) ............................................................................ 8
50 C.F.R. §216.93(f)(3) ................................................................................................. 8
50 C.F.R. §216.94 ........................................................................................................ 15

California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 ............................ 2
California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ........................ 2
Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 ...................... 2
Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§325F.67-325F.68 .......... 2
New Jersey Consumer Fraud Act, §56:8-2.10 .............................................................. 2
New York General Business Law §349 ......................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4
Fed. R. Civ. P. 9(b) ....................................................................................................... 5
Rule 8(a)(2) .................................................................................................................... 4

v

Defendant, Tri-Union Seafoods, LLC, dba Chicken of the Sea International ("COSI") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiffs' First Amended Class Action Complaint.

## I.   STATEMENT OF ISSUES TO BE DECIDED

(1)   Whether Plaintiffs' state-law consumer protection claims are preempted by federal laws governing the use of the "dolphin-safe" label.

(2)   Whether the Court lacks subject matter jurisdiction because Plaintiffs have failed to plead allegations to establish standing under Article III of the United States Constitution.

(3)   Whether Plaintiffs fail to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") because Plaintiffs' claims (a) are predicted on purported violations of a federal law that does not afford a private right of action; and (b) fail to state sufficient allegations of an enterprise formed for a common unlawful purpose.

(4)   Whether Plaintiffs fail to plead their fraud claims with the particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.[1]

## II.   INTRODUCTION

COSI sells tuna labeled as "dolphin-safe" in accordance with a robust federal law, the Dolphin Protection Consumer Information Act (the "DPCIA"), which *exclusively* governs the use of that term on tuna product labels.  Plaintiffs' First Amended Class Action Complaint (the "FAC") challenges the comprehensive statutory and regulatory federal regime governing the use of the "dolphin safe" label but fails to allege *any specific conduct by COSI* that violates any law.  Plaintiffs obviously disagree with the DPCIA and the tuna fishing methods it permits, but they cannot use this lawsuit to upend or circumvent it.

In 1972, Congress enacted the Marine Mammal Protection Act (the "MMPA")[2], which balanced competing interests of domestic environmental groups and the commercial food industry. In 1990, Congress added the DPCIA[3] to the MMPA.  The DPCIA and its accompanying regulations,

---

[1] All future references herein to a "Rule" or "Rules" shall be to the Federal Rules of Civil Procedure.
[2] 16 U.S.C. §1361 *et seq.*
[3] 16 U.S.C. § 1385

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS                                          CASE NO. 4:19-cv-02562-JST

50 C.F.R. § 216.90 et seq., explicitly establish, regulate and enforce uniform requirements for the label "dolphin safe" on tuna products.

Based on generalized grievances with fishing methods in the tuna industry, Plaintiffs attempt to plead violations of the consumer protection statutes of five states (collectively the "State Law Claims"), as well as RICO violations. However, their conclusory allegations fail to state claims under the State Law Claims or RICO.  The FAC should be dismissed without leave to amend for the following reasons:

First, Congress intended that the DPCIA *exclusively* govern the use of the "dolphin safe" label on tuna products and intended that federal agencies, not private citizens, enforce the DPCIA. Together, the MMPA and DPCIA occupy the entire field and preempt all claims that Plaintiffs allege in the FAC.  Plaintiffs' claims also conflict with federal law because it would be impossible for tuna fisherman and others in this worldwide industry to comply with a patchwork of 50 state standards while simultaneously complying with the federal law regulating tuna-fishing practices and dolphin safe labeling.

Second, the FAC fails to properly plead that any Plaintiff was injured or harmed by any action *by COSI*. Instead, the FAC merely asserts *generalized* allegations about fishing methods, which Plaintiffs deem "un-dolphin safe." Plaintiffs thus lack concrete injury and do not have standing to bring this case.

Third, this action seeks to improperly undermine Congressional intent and circumvent the MMPA and the DPCIA, neither of which permits a private right of action.

Fourth, Plaintiffs' RICO cause of action fails because the alleged unlawful "scheme" consists entirely of lawful, routine commercial activity that the DPCIA *expressly permits*.

Fifth, Plaintiffs' RICO and State Law Claims sound in fraud, but Plaintiffs failed to plead those claims with the particularity required by Rule 9(b).

In sum, Plaintiffs ask this Court to ignore the uniform federal system that Congress has carefully crafted in favor of Plaintiffs' subjective beliefs of how the tuna fishing industry should answer to state consumer remedies laws. But that is not what Congress intended. The federal statutory scheme entirely occupies the field and preempts issues regarding the protection of marine mammals,

- 2 -

1  dolphin sustainability, tuna harvesting and critically, "dolphin safe" labeling.  Furthermore, when

2  stripped of Plaintiffs' totally unsupported, non-specific "factual" allegation that vessel captains are

3  lying on "dolphin safe" certifications, all of the acts complained of in the FAC consist of entirely

4  lawful behavior.  Even if all the captains are lying – *and there are no sufficiently plead allegations*

5  *that they are* – Plaintiffs sole recourse is an enforcement action with the National Oceanic and

6  Atmospheric Administration ("NOAA").  Accordingly, Plaintiffs' FAC should be dismissed in its

7  entirety, with prejudice because amendment would be futile.

8  **III.    BACKGROUND**

9         The MMPA and the DPCIA (and the accompanying regulations) create a comprehensive,

10  federal regulatory scheme that governs labeling of tuna as "dolphin safe."  Congress adopted the

11  MMPA in 1972 after concluding that federal legislation was necessary to protect marine mammals as

12  a resource of great international aesthetic and economic significance.  The objective of the MMPA

13  was to achieve optimum populations of marine mammals to sustain a healthy and stable marine

14  ecosystem while ensuring that oceanic fish would continue to be available to move in interstate

15  commerce.

16         Because tuna fishing occurs in international waters, the MMPA found and declared as a matter

17  of Congressional policy that international arrangements were necessary to develop a *uniform* system

18  to conserve all marine mammals and govern interstate commerce under one set of rules and

19  enforcement mechanisms.  In 1990, Congress added the DPICA to the MMPA to ensure that the

20  legality and enforcement of dolphin safe labeling is within the *exclusive province* of the Secretary of

21  Commerce (the "Secretary") and its member agencies, including the National Oceanic and

22  Atmospheric Administration ("NOAA"). The Secretary and NOAA have implemented and enforced

23  a mandated *uniform* certification program for "dolphin safe" labeling of tuna products for the last 30

24  years.

25         The federal statutory framework, which has been in existence for 47 years, achieved a

26  compromise between competing environmental and commercial interests. And it has been

27  exceedingly successful. Since the passage of the MMPA and the DPCIA, the dolphin-safe programs

28  of the United States and its international partners have reduced dolphin mortality from 133,000 per

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                                    CASE NO. 4:19-cv-02562-JST

1  year to about 1,000 per year, an astonishing 99% reduction. *See* Request for Judicial Notice

2  hereinafter referred to as (the "RJN") filed and served concurrently herewith, Ex. 1 at p.3.

3         Under the MMPA, the DPCIA, and the regulations promulgated by the Secretary and NOAA,

4  purse seine and longline methods of fishing are lawful. Tuna caught by those methods is also

5  permitted to be labeled "dolphin safe," if it meets certain requirements specified by federal law.

6  **IV.   PLAINTIFFS' ALLEGATIONS**

7         Plaintiffs are residents of five states who allege that they were deceived by "dolphin safe"

8  labels on certain COSI tuna products. FAC ¶¶ 81-96. Plaintiffs allege that COSI tuna "was not

9  dolphin safe as represented" because the tuna were allegedly caught using "purse seine nets and

10  longlines" rather than "one at a time" using traditional pole-and-line trolling methods. FAC ¶¶ 41-

11  42. According to Plaintiffs, "pole-and-line" fishing of tuna "one at a time" is the only way to "ensure

12  that dolphins (and other bycatch) are not harmed in the fishing process." FAC ¶¶ 40-41. Plaintiffs

13  also contend that COSI and seven other companies involved in COSI's tuna supply chain (the

14  "Alleged Co-Conspirators") "concocted a scheme" and "falsely assured the public and regulators"

15  that the canned tuna was dolphin safe. FAC ¶ 119.

16         Based on these allegations, Plaintiffs assert violations of state consumer laws[4], unjust

17  enrichment, and violations of the RICO statute. The FAC does ***not*** allege that (1) any COSI tuna

18  product contained tuna caught using purse seine nets intentionally set to encircle dolphins that resulted

19  in death of or serious injury to any dolphin; (2) any COSI tuna product purportedly purchased by

20  Plaintiffs contained tuna caught using purse seine nets intentionally set to encircle dolphins or that

21  resulted in death of or serious injury to any dolphin; or (3) COSI violated the DPCIA in any way.

22

23

24  _____

25  [4] The State Law Claims, to wit: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq.; (2) California's Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.; (3) the Florida

26  Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, et seq.; (4) the New York General Business Law §349; (5) the New Jersey Consumer Fraud Act, §56:8-2.10; (6) the Minnesota Prevention of Consumer

27  Fraud Act, Minn. Stat. §§325F.67-325F.68; and (7) the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, et seq. (the "State Law Claims"). FAC ¶¶ 185-256.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                    CASE NO. 4:19-cv-02562-JST

V.   **LEGAL STANDARD**

"Federal Courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They exist for people who are actually injured.  Without "injury in fact" "fairly traceable to the challenged actions of the defendant"[,] a plaintiff cannot establish Article III standing, and the complaint must be dismissed pursuant to Rule 12(b)(1).  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 61 (1992).

Separately, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 555 U.S. 544, 570 (2007)).  Facial plausibility is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering a Rule 12(b)(6) motion, the court "should assume the[] veracity" of the complaint's well-pleaded factual allegations, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678-679.  Courts may consider the complaint, exhibits and other "material which [are] properly submitted as part of the complaint," documents not contested which "the plaintiff's complaint necessarily relies on," and judicially noticed documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).

When a plaintiff alleges fraud or mistake, the plaintiff must "set forth more than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co., 567* F.3d 1120, 1124 (9th Cir. 2009).   "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Specifically, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co., 567* F.3d 1120, 1124 (9th Cir. 2009

VI.   **COMPREHENSIVE FEDERAL LAW REGARDING DOLPHIN SAFE LABELS**

A.   **THE MMPA AND THE DPCIA**

The federal government has regulated dolphin safe labeling of tuna products for nearly 50 years.  The MMPA sets forth an extensive regulatory regime governing the commercial fishing industry. 16 U.S.C. §1361 *et seq.* Congress's "primary objective" in enacting the MMPA was to

- 5 -

1   maintain an "optimum sustainable population" of marine mammals, while recognizing their great

2   "international significance" and importance in ensuring the "continuing availability of [marine

3   mammals, marine mammal products, and other animal products] which move in interstate

4   commerce." 16 U.S.C. § 1361(5)-(6).

5        Congress added the DPCIA in response to growing concern about dolphin mortalities in the

6   ETP. The DPCIA added a provision to the MMPA that included labeling, certification, tracking and

7   verification procedures of dolphin safe tuna fishing. 16 U.S.C. § 1385(d). The Secretary of

8   Commerce delegated regulatory authority to NOAA and the National Marine Fisheries Service

9   ("NMFS"). 50 C.F.R. § 216.90-95; 15 C.F.R. § 904.1.

10        In response to World Trade Organization (the "WTO") proceedings, the DPCIA and its

11   regulations were amended in 2016. Specifically, the adoption of 50 C.F.R. §216.91 brought "the

12   United States into compliance with its obligations as a Member of the World Trade Organization."

13   81 Fed. Reg. 15444, 15445 (March 23, 2016). Thus, the current regulatory regime strikes a delicate

14   balance between international law, commercial interests, and environmental concerns.[5]

15           **1.**     **Federal Law Requires Certification, Tracking and Verification**

16                    **Procedures**

17        The DPCIA and its implementing regulations are comprehensive in scope. Under federal law,

18   tuna may be labeled as dolphin safe if the fishing practices meet certain specific federal requirements.

19   50 C.F.R. § 216.91-95. In particular, tuna may be labeled "dolphin safe" when using the purse seine

20   method if the tuna caught on a fishing trip is certified that no "purse seine net or other fishing gear

21   was intentionally deployed on or used to encircle dolphins during the fishing trip in which the tuna

22   were caught, and that no dolphins were killed or seriously injured in the sets or other gear deployments

23   in which the tuna were caught." 50 C.F.R. § 216.91(a)(1) and (3)(iii)(A).

24        The certification requirements are thorough and complex. For example, for tuna caught in the

25   ETP by purse seine vessels, both the captain of the vessel and the on-board observer must certify in

26   writing that the federal requirements were followed. 50 C.F.R. §§ 216.92(a). For tuna caught outside

27

28   [5] *See* 81 Fed. Reg. 15444 (March 23, 2016) - Enhanced Document Requirements and Captain Training
Requirements To Support Use of the Dolphin Safe Label on Tuna Products (RJN, Ex. 2.)

- 6 -

the ETP using the purse seine method, the captain of the vessel must certify in writing that the federal requirements were followed and that he or she "has completed the NMFS Tuna Tracking and Verification Program dolphin-safe captain's training course." 50 C.F.R. § 216.91(a)(3)(iii)(B).

All tuna caught and designated as dolphin safe, whether caught within or outside the ETP, must be stored separately from tuna caught in non-dolphin safe sets from the moment of capture through unloading. 50 C.F.R. § 216.93(c). Tuna caught and designated as dolphin safe also requires "chain of custody" recordkeeping to allow NMFS to trace any non-dolphin safe tuna to storage facilities and ensure it was kept physically separate from dolphin safe tuna. 50 C.F.R. §§ 216.91 (a)(4)-(5), 216.93.

## 2. Enforcement of the MMPA and the DPCIA Are Delegated to Federal Administrative Channels

### a. Enforcement of the MMPA

The MMPA expressly states that "[e]xcept as otherwise provided in this subchapter, the Secretary [of Commerce] shall enforce the provisions of this subchapter." 16 U.S.C. § 1377(a). The Secretary's authority to enforce the MMPA is exclusive; *there is no private right of action*. *Strahan v. Coxe*, 127 Fed.3d 155, 160 (1st Cir. 1997) (holding that "[t]he MMPA does not authorize citizen suits against a person alleged to be in violation of the Act,").

In addition to designating the Secretary to enforce the MMPA, Congress gave the Secretary the authority to deputize officers and employees of a State to "function as Federal law enforcement agents" strictly for the purpose of policing the MMPA. 16 U.S.C. § 1377(b). Except as authorized by the Secretary, a State is prohibited from enforcing, or attempting to enforce, any state law or regulation concerning marine mammals. 16 U.S.C. § 1739(a). Through this enforcement mechanism, Congress intended that protection of dolphins be exclusively a matter of federal law.

### b. Enforcement of the Dolphin Safe Labeling Standard

Congress chose to enforce the DPCIA through two exclusive avenues. First, Section 1385(d)(1) makes it a violation of the Federal Trade Commission Act (the "FTCA"), 15 U.S.C. § 45, for any tuna producer, importer, exporter, distributor, or seller to "falsely claim[] or suggest that the tuna contained in the product were harvested using a method of fishing that is not harmful to

- 7 -

dolphins." 16 U.S.C. § 1385(d)(1).  Section 45(a)(1) of the FTCA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a).  Enforcement proceedings under the FTCA are brought by the Federal Trade Commission itself.  15 U.S.C. § 45(a)(2).  There is no private right of action under the FTCA. *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) ("The Act rests initial remedial power solely in the Federal Trade Commission"); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-281 (9th Cir. 1973).

Additionally, the DPCIA states that the Secretary "shall enforce" conservation laws including the DPCIA and the MMPA.  16 U.S.C. § 1385(e); 1826g(a)-(c) (the Secretary has the "same jurisdiction, powers, and duties" to address violations of the DPCIA as those provided at 16 U.S.C. §§ 1858-1861).[6]

To enforce the DPCIA and the MMPA, NOAA has authority to issue injunctive relief as well as "assess civil penalties, impose permit sanctions, issue written warnings, and/or seize and forfeit property in response to violations." 15 C.F.R. §§ 904.1(c).  Further, the federal government tasked NOAA with establishing a tracking and verification program, which requires maintenance of detailed dolphin safe documentation at every stage of the supply chain and authorizes periodic audits and spot checks conducted by NOAA. 50 C.F.R. § 216.93(f)(3); 16 U.S.C. § 1385(f)(6).

In addition, when a U.S. tuna processor receives a shipment of domestic or imported tuna, a NMFS representative may be present to verify the dolphin safe designations.  50 C.F.R. § 216.93(d)(1).  U.S. tuna processors are also required to submit monthly reports for all tuna received at their processing facilities. 50 C.F.R. § 216.93(d)(2).[7]  Tuna product found to be wrongfully labeled

---

[6] 16 U.S.C. § 1858 authorizes the Secretary to issue subpoenas, revoke or suspend fishing permits, assess civil penalties, and seize vessels.  §1859 authorizes criminal penalties for certain offenses, including the knowing submission of false information (16 U.S.C. §1857(1)(I)), as well as the bribery of or interference with any observer on a vessel (16 U.S.C. § 1857(1)(L)).  §1860 authorizes civil forfeitures.  §1861 allows arrests, boarding of the vessel, seizing of any cargo, and issuance of citations.  §1826g(c)(2) also authorizes the Secretary to engage in international cooperation to help other nations combat unregulated fishing activities.

[7] These reports contain the species, condition, weight, ocean area of capture, catcher vessel, gear type, trip dates, carrier name, unloading dates, location of unloading and, if the tuna products are designated as dolphin safe, the required certifications for each shipment of tuna. 50 C.F.R. § 216.93(d)(2)(i)-(ii), (e).

- 8 -

1    can be seized as evidence, re-exported, destroyed, or forfeited.  Sanctions for offering for sale or

2    export tuna products falsely labeled dolphin safe may be assessed against any producer, importer,

3    exporter, distributor, or seller who is subject to the jurisdiction of the United States. *See First Written*

4    *Submission of the United States of America* (May 27, 2019), Measures Concerning the Importation,

5    Marketing and Sale of Tuna and Tuna Products:  Recourse to Article 21.5 of the DSU by Mexico

6    (DS381), ¶ 53 (RJN Ex. 3).

7         Tuna imported into the U.S. in compliance with this thorough statutory certification program

8    may be labeled as "dolphin safe."  50 C.F.R. §§ 216.91-216.92.  The implementation and enforcement

9    of this entire statutory program is within the ***exclusive*** province of federal law.

10   **VII.    ARGUMENT**

11       **A.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED**

12        The DPCIA exclusively occupies the field of dolphin-safe labeling and its related fishing

13   practices. Plaintiffs' claims attempt to impose requirements on COSI that are different from and

14   inconsistent with the comprehensive federal regulatory regime. Plaintiffs' theory of the case

15   contradicts and renders meaningless the entire certification, monitoring and enforcement scheme

16   Congress enacted for dolphin safe labeling of COSI's tuna products.  They are thus preempted and

17   should be dismissed.

18        Preemption may be implied where the state law is in an area or field "fully occupied by federal

19   regulation or where it conflicts with federal law." *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103

20   (9th Cir. 2016).  Field preemption occurs where (1) the Congressional "regulatory framework is so

21   pervasive" or "occupies the field" such that there is no room for state regulation, or (2) where the

22   "federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of

23   state laws on the same subject."  *Id.* at 1103-1104; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S.

24   363, 372-373 (2000); *see also In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1113 (S.D. Cal. 2011)

25   ("consumer protection laws are. . . preempted if they seek to impose requirements that contravene

26   requirements set forth by federal law.")  Conflict preemption occurs where state law (1) "stands as

27   an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or

28   (2) "it is impossible to comply with both federal and state law."  *Id.*  In both field and conflict

- 9 -

1   preemption cases, the touchstone of the inquiry is congressional intent.  *Wyeth v. Levine*, 555 U.S.
2   555, 565 (2009).

3           1.        **Plaintiffs' Claims are Field Preempted Because Congress Occupies the**
4                   **Field of "Dolphin Safe" Tuna Fishing Operations**

5         Plaintiffs' State Law Claims fail because the federal government occupies the entire field of
6   dolphin safe representations on tuna product labels.  By enacting the MMPA and the DPCIA,
7   Congress intended the regulatory framework to implement a uniform national standard that respects
8   the interest in international commerce, to encompass all possible enforcement mechanisms for
9   violation of the dolphin safe standard, and to spell out the only specific instances in which a state may
10  regulate the "taking" of marine mammals.  *See e.g.*, 16 U.S.C.A. § 1361, 1373.  The FAC seeks to
11  encroach into each and every one of these policies.  If allowed to proceed, Plaintiffs' State Law Claims
12  would drastically upend a comprehensive federal regulatory framework that Congress intended to
13  fully encompass the tuna industry and are thus preempted.

14        The Supreme Court and the Ninth Circuit have held that the federal interest in uniformity in
15  maritime law must be considered in any attempted state regulation of maritime law, especially
16  attempts to reach waters outside of a state's territory.  *See United States v. Locke*, 529 U.S. 89, 108
17  (2000)(discussing *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 178, fn.28 (1978)); *Pacific Merchant*
18  *Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1424-1425 (9th Cir. 1990) (dismissing as preempted an
19  attempted application of California's overtime pay laws to seamen and employees working primarily
20  on high seas outside of California's territorial waters).

21        Key provisions of the MMPA confirm that federal law occupies the field.  Section 1379(a)
22  states that "*[n]o State may enforce*, or attempt to enforce, any State law or regulation *relating to* the
23  *taking* of any marine mammal within the State" unless the Secretary affirmatively authorizes the State
24  to do so.  16 U.S.C. §1379(a) (emphasis added).  Here, it is undisputed that Plaintiffs' claims "relat[e]"
25  to the "taking" of marine mammals.  *See* 16 U.S.C. § 1362(13) (defining "take" as "to harass, hunt,
26  capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal."); *see also UFO*
27  *Chuting of Hawaii, Inc. v. Young*, 380 F.Supp.2d 1166, 1171 (D. Hawaii 2005) (holding Hawaii's
28  attempts to prohibit parasailing off its coast at certain times of the year to protect humpback whales

- 10 -

1   *related to the taking of marine mammals* for purposes of MMPA).  Accordingly, the plain meaning

2   of the MMPA confirms that Congress intended that federal law occupy the field.

3        The MMPA and the DPCIA also demonstrate that Plaintiffs' claims improperly interfere with

4   an international field because statutory language requires the Secretary to consider whether a label

5   undermines the goals of the International Dolphin Conservation Program ("IDCP"), a multilateral

6   agreement legally-binding on the U.S. *See* 16 U.S.C. § 1385(d)(3)(D).

7        Moreover, federal law in this space has international implications. For instance, in an

8   international trade dispute, the WTO noted the Dolphin Safe Labeling Standard's complete

9   occupation of the field of labeling tuna as dolphin safe:

10   > [The DPCIA] establishes a single and legally mandated set of requirements
11   > for making any statement with respect to the broad subject of "dolphin-
>    safety" of tuna products in the United States.  As the Panel found, the US
12   > "dolphin-safe" labelling provisions set out "certain requirements that must
>    be complied with in order to make *any* claim relating to the manner in which
13   > the tuna contained in [a] tuna product was caught, in relation to dolphins".
>    The US measure thus *covers the entire field* of what "dolphin-safe" means
14   > in relation to tuna products in the United States.

15   World Trade Organization Appellate Body Report, United States – Measures Concerning the

16   Importation, Marketing and Sale of Tuna and Tuna Products, WTO Doc. WT/DS381/AB/R (16 May

17   2012) (emphasis added) (RJN Ex. 4) Additionally, the U.S. representative explained how NOAA and

18   NMFS conduct enforcement of the standard: any product found to have been wrongfully labeled will

19   likely be seized, re-exported, destroyed, or forfeited, and sanctions for offering for sale or export tuna

20   products falsely labeled as dolphin safe will likely be assessed.  (See First Written Submission of

21   United States of America, supra, ¶ 53) (RJN Ex. 3). The WTO found that U.S. dolphin-safe labeling

22   requirements treated Mexican tuna less favorably than U.S. tuna products. In response to that

23   determination, NMFS amended the dolphin-safe regulations to "bring[] the United States into

24   compliance with its obligations as a Member of the [WTO]." 81 Fed. Reg. 15444-01, at 15445 (Mar.

25   23, 2016).  The regulatory framework addresses all possible concerns with respect to enforcement of

26   a statute with far-reaching, international implications, which cannot be addressed by a patchwork of

27   50 state laws.

28

- 11 -

1   Congress intended for the DPCIA to occupy the entire field of commercial tuna fishing and

2   labeling of "dolphin safe" tuna. As a result, Plaintiffs' State Law Claims, which attempt to impose a

3   new standard prohibiting use of purse seine or longline fishing methods, are field preempted.

4         **2.**      **Plaintiffs' Claims Are Conflict Preempted Because They Attempt to**

5                     **Enforce the DPCIA and Challenge a Federal Standard for which**

6                     **Congress Intended Uniformity**

7   Congress designed a comprehensive enforcement scheme that leaves no room for Plaintiffs'

8   claims. *See e.g. Perez v. Nidek Co.*, 711 F.3d 1109, 1119-1120 (9th Cir. 2013) (holding that the FDA

9   is responsible for enforcing the FDCA and there is no private right of action available). To allow a

10  private party to pursue claims based solely on a violation of the MMPA or the DPCIA, ***both of which***

11  ***intentionally omitted a private right of action***, would permit "an obstacle to the accomplishment and

12  execution of the full purposes and objectives of Congress." *Puente Arizona v. Arpaio*, 821 F.3d 1098,

13  1103 (9th Cir. 2016). Plaintiffs' claims are therefore preempted.

14  The DPCIA grants the Secretary discretion to determine how to enforce the dolphin safe rules

15  and does not provide a private right of action. 16 U.S.C. § 1385(e); 1826g; 1858-1861. And, the

16  Secretary has promulgated specific enforcement regulations. *See e.g.,* 50 C.F.R. § 216.94 (false

17  statements or endorsements result in a civil penalty in an action brought "on behalf of the Secretary.")

18  Section 1377(a) also requires that, "[e]xcept as otherwise provided in this subchapter, the Secretary

19  shall enforce the provisions of this subchapter." 16 U.S.C. § 1377(a). The administrative remedies

20  delegated to the Secretary, along with the absence of a private right of action, reflects Congress' intent

21  for ***exclusive enforcement by the Secretary***. *Fouke v. Mandel*, 386 F.Supp. 1341, 1358 (D. CO 197).

22  Under the DPCIA, Congress and the Secretary also implemented a set of procedures

23  monitored by NOAA that allow COSI and other purchasers of tuna to rely on certifications that the

24  tuna being purchased is "dolphin safe" *as a matter of federal law*. The federal government tasked

25  NOAA with establishing a tracking and verification program which involves periodic audits and spot

26  checks conducted by NOAA. 50 C.F.R. § 216.93(g)(3). *See* RJN Ex. 5. Indeed, NOAA most recently

27  spot checked COSI in 2018 to determine compliance with dolphin safe labeling claims, and that audit

28  resulted in NOAA's determination that COSI's tuna met dolphin safe standards. *See* RJN Ex. 6.

- 12 -

1    Through the MMPA and DPICA, Congress intended the Secretary and NOAA possess exclusive

2    means to enforce marine mammal protection rules.

3         If Plaintiffs are concerned about potential violations of the MMPA or DPCIA, the proper

4    channel is to file an administrative complaint with NOAA.[8]  Courts have repeatedly held that plaintiffs

5    cannot circumvent a complex, uniform enforcement framework authorizing administrative

6    remedies—but not a private right of action.  *See, e.g., Armstrong v. Exceptional Child Center, Inc.*,

7    135 S.Ct. 1378, 1385 (2015).

8         Additionally, attempts to sue for violations of federal regulations are preempted unless a state

9    law expressly incorporates the requirements of federal law wholesale.  *See Geier v. Am. Honda Motor

10   Co.*, 529 U.S. 861, 868, 881 (2000).  For example, in *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d

11   1074 (C.D. Cal. 2017), California's Sherman Law "incorporate[d] the FDCA's requirements

12   wholesale, and d[id] not impose any additional obligations."  Thus, California's intent was to provide

13   an "independent right of action" to its citizens to sue for violations of FDCA requirements under state

14   law.  *Id.* At 1084-1085.  In contrast, New York law did *not* adopt a statute incorporating the FDCA

15   wholesale, and the court held that "[w]here, like here, a plaintiff's true purpose is to enforce federal

16   regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory

17   scheme is not sufficient to escape preemption."  *Id.* at 1086; *see also Stengel v. Medtronic, Inc.*, 704

18   F.3d 1224, 1233 (9th Cir. 2013); *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348

19   (2001).

20        Here, Plaintiffs' state law claims are based on allegations that captains' dolphin safe

21   certifications are false because there is "strong financial incentive" and it is "relatively simple to do

22   this," and COSI allegedly does not "track, trace, and report the number of dolphins killed or harmed."

23   FAC at ¶ ¶ 56-57.  The alleged misrepresentations based on purported false certificates and a lack of

24   tracking and verification, are *not* "separate from any representations made by the defendants for

25   _____

26   [8] NOAA has a Fisheries' Enforcement Hotline to obtain information from the public to help protect our
     nation's living marine resources. "NOAA's Office of Law Enforcement (OLE) may, on a case-by-case basis,

27   issue rewards to individuals who provide information that leads to an arrest, conviction, civil penalty
     assessment, or forfeiture of property for violation[s] of the laws and regulations NOAA enforces." *Report a*

28   *Violation*, NOAA, https://www.fisheries.noaa.gov/national/enforcement/report-violation (last visited Aug.
     19, 2019)). *See* RJN Ex. 7.

1  consideration in the [] certification process," they are analogous to "state law challenges to the

2  [dolphin safe] certification determination itself," which are conflict preempted by the federal

3  government's enforcement scheme.  *Marantette v. Abbot Laboratories*, 886 F.3d 112, 118 (2nd Cir.

4  2018).  Thus, it is not possible for Plaintiffs' claims to survive without contradicting and disposing of

5  the entire dolphin safe labeling and certification program promulgated by Congress.  To the extent

6  Plaintiffs allege COSI has violated the DPCIA by sourcing from vessels that harm dolphins, the

7  *proper and indeed **only*** recourse for Plaintiffs is to pursue their concerns by filing a complaint with

8  NOAA.

9       Congress clearly and carefully chose numerous enforcement mechanisms and expressly

10  denied a private right of action under the MMPA and DPCIA.  The FAC attempts to circumvent

11  Congress's certification, monitoring and enforcement scheme by alleging State Law Claims

12  masquerading as violations of the DPCIA and its implementing regulations.  Plaintiffs' State Law

13  Claims would stand as an obstacle to federal enforcement and are therefore preempted.

14                      **a.**      **Uniform Federal Law Compliance**

15       Plaintiffs allege that use of purse seine and longline fishing methods is never dolphin safe and

16  attempt to manufacture state law standards in direct conflict with Congress' express *permission* to

17  label as dolphin safe tuna caught using purse seine and longline fishing methods.  16 U.S.C. § 1385

18  (d); 50 C.F.R. § 216.91-216.92.  Plaintiffs' demand that COSI comply with multiple conflicting

19  standards for dolphin safe compliance of its fishing methods is preempted.

20       Congress intended a uniform federal regulatory regime to prescribe the circumstances under

21  which purse seine and longline fishing methods can be used to catch dolphin safe tuna based on expert

22  findings made by the Secretary.  50 C.F.R. §§ 216.90-216.92.  Plaintiffs' claims that such fishing

23  methods are not "actually 'dolphin-safe'" render the Secretary's authority meaningless, frustrates

24  Congressional intent, and would lead to a patchwork of 50 state standards which would be impossible

25  for commercial fishermen and others in the tuna supply chain to satisfy.  FAC ¶ 41.  Such a result

26  would be directly at odds with Congress's intent.  *See e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*,

27  531 U.S. 341, 350-352 (2001).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                                                    CASE NO. 4:19-cv-02562-JST

1    Congress intended *uniformity* in imposing the federal dolphin safe standard.  The framework

2    and provisions of the DPCIA and its implementing regulations are so comprehensive in scope that

3    they address all aspects of the tuna supply chain and involve extensive efforts to minimize harm to

4    marine mammals while allowing the tuna industry to survive.  *See* 16 U.S.C. § 1385; 50 C.F.R.

5    §216.91.  To accomplish that goal, Congress gave the Secretary comprehensive, controlling authority

6    to determine whether state law is consistent with federal objectives in the complex field of marine

7    mammal protection, which requires significant expertise. 16 U.S.C. § 1379 (b); *Fouke Co. v. Mandel,*

8    386 F. Supp. 1341, 1360 (D. Md. 1974).  Congress has continued to reassess and modify the Dolphin

9    Safe Labeling Standard and imposed additional obligations on the Secretary to conduct "specifically

10   mandated scientific research" to determine the effects of tuna purse seine fishing on dolphins and

11   further minimize harm. *See Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1067 (N.D. Cal. 2003).

12   Further, federal regulation Section 216.91 imposes extensive requirements on the commercial fishing

13   industry that vary based on specific fisheries, geographic location, size of vessel, and fishing method.

14   50 C.F.R. § 216.91.

15   The authorization of the use of purse seine and longline fishing methods under a

16   "comprehensive framework" with "precisely-detailed" requirements as Congress has laid out in the

17   DPCIA exhibits a desired uniformity and the intent to exclude private enforcement.  *Chae v. SLM*

18   *Corp.*, 593 F.3d 936, 944 (9th Cir. 2010); *see also, Armstrong v. Exceptional Child Ctr., Inc.,* 135 S.

19   Ct. 1378, 1385 (2015).  Therefore, "to say that state law prohibits [purse seine and longline fishing

20   methods] and requires [different methods than federal law] is in conflict" with the goal of a uniform

21   Dolphin Safe Labeling Standard would put COSI in the impossible predicament of trying to comply

22   with multiple standards in contravention of Congressional intent for a single uniform standard applied

23   on an international basis.  *Chae v. SLM Corp.*, 593 F.3d 936, 948 (9th Cir. 2010).

24   Congress balanced competing environmental and commercial policies in arriving at the

25   statutory and regulatory scheme of the MMPA.  16 U.S.C. § 1361(5)-(6); *see People of Togiak v.*

26   *U.S.*, 470 F.Supp. 423, 427 (1979) ("What emerges vividly from an examination of the total statutory

27   scheme [of the MMPA] is that the Congress carefully considered [] competing considerations and

28   deliberately struck a balance.").  To balance these competing interests, Congress tasked the Secretary

- 15 -

1  not only with the goal of conservation, but also to help "insure the continuing availability of those

2  products which move in interstate commerce[.]" 16 U.S.C. § 1361(5)(B).  Allowing Plaintiffs to

3  proceed with their State Law Claims that purse seine and longline fishing methods are never "actually

4  dolphin safe"—*even when federal law says they are*—would render meaningless Congress's

5  balancing of policy objectives intended to impose uniform standards for commercial tuna fishing

6  operations.  Plaintiffs' State Law Claims thus should be dismissed as conflict preempted.

7        The Supreme Court has repeatedly affirmed the dismissal of similar claims as preempted. For

8  instance, in *Geier v. American Honda Motor Co.*, the Supreme Court held that a lawsuit against an

9  automobile manufacturer making cars without airbags was preempted because it conflicted with the

10  DOT regulation permitting automakers to choose between a range of restraint devices.  *Geier v. Am.*

11  *Honda Motor Co.*, 529 U.S. 861, 881 (2000).  Although safety was the agency's primary concern, the

12  DOT also had to consider cost to consumers, among other policies.  *Id.* at 877-881.  Thus, imposing a

13  different standard through state law, even if *more protective* than the federal standard, "would have

14  stood as an obstacle to the [standard] that the federal regulation deliberately imposed."  *Id.* at 881;

15  *see also City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 638-640 (1973) (holding state law

16  challenges preempted when the federal government strikes a balance between competing policy

17  objectives to develop a uniform standard).

18        Here, regardless of whether Plaintiffs intended to challenge the adequacy of the federal

19  Dolphin Safe Labeling Standard, "the inescapable effect of [their] complaint is to do so."  *Farina v.*

20  *Nokia Inc.*, 625 F.3d 97, 122 (3d Cir. 2010).  Despite this, the conduct Plaintiffs challenge is ***expressly***

21  ***permitted*** by federal law.  50 C.F.R. §§ 216.91-216.92.  Plaintiffs' claims are conflict preempted.

22  **B.    PLAINTIFFS LACK ARTICLE III STANDING**

23        Plaintiffs lack Article III standing because they fail to allege any injury that is traceable to

24  COSI. Three elements are required to establish Article III standing. *Lujan v. Defenders of Wildlife*,

25  504 U.S. 555, 560-561, 112 S. Ct.2130, 2136 (1992). First, Plaintiffs must have suffered an injury in

26  fact – "an invasion of a legally protected interest which is (a) concrete and particularized and (b)

27  actual or imminent, not conjectural or hypothetical." *Id.* at 560.  Second, the injury must be fairly

28  traceable to the challenged action of the defendant. *Id.*  Third, "it must be likely, as opposed to merely

1  speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. Plaintiffs have the

2  burden of establishing a concrete injury in fact sufficient to support Article III standing. *Id.* The

3  Ninth Circuit has clearly established that mere "allegations of *possible* [] injury are not sufficient[]"

4  to confer Article III standing. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)

5  (emphasis added).

6          Here, the FAC does not allege that Plaintiffs purchased tuna that COSI sold that came from

7  a vessel that allegedly harmed or deployed a net that encircled a dolphin. The FAC simply alleges

8  that, in some instances, purse seine or longline fishing methods in general have a *possibility* of

9  harming dolphins, and thus COSI's tuna is allegedly non-dolphin-safe. FAC at ¶ 40-54. The mere

10  *possibility* of harming dolphins through use of purse seine or longline fishing methods is entirely

11  speculative and does not constitute a concrete injury, nor do the general allegations that such harm

12  occurs "often" or to the degree of "over a thousand a year according to NOAA[.]" FAC at ¶¶ 44-48.

13  Plaintiffs lack standing to bring this case based on allegations of a mere "possibility" of harm to

14  dolphins during the course of commercial fishing operations by COSI's suppliers.

15      **C.      THE FAC'S FIRST CAUSE OF ACTION UNDER RICO IS FATALLY**

16              **DEFECTIVE AND SHOULD BE DISMISSED**

17          Plaintiffs allege that COSI violated RICO by "falsely represent[ing] . . . that Defendant's tuna

18  products were dolphin-safe under U.S. law and regulations." FAC ¶ 119. Plaintiffs allege that the

19  seven other Alleged Co-Conspirators in COSI's regular supply chain participated in this scheme by

20  using purse seine or longline fishing methods that Plaintiffs disdain. However, Plaintiff's RICO cause

21  of action is fatally flawed because (1) there is no private right of action under MMPA or DPCIA, and

22  Plaintiffs cannot create one by alleging a RICO claim as an end-run around Congressional intent; and

23  (2) Plaintiffs fail to allege the existence of an illegal criminal enterprise necessary to state a claim for

24  a RICO violation.

25  / / /

26  / / /

27  / / /

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                        CASE NO. 4:19-cv-02562-JST

1          **1.    Plaintiffs RICO cause of action fails because there is no private right of**

2                   **action under the DPCIA or MMPA**

3          Plaintiffs' RICO claims fail as a matter of law because the DPCIA does not confer a private

4   right of action. "Like substantive federal law itself, private rights of action to enforce federal law

5   must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

6          *Neither the MMPA nor the DPCIA authorizes private citizen suits under any*

7   *circumstances*. 16 U.S.C. § 1377(a) (regarding MMPA "[e]xcept as otherwise provided in this

8   subchapter, the Secretary shall enforce the provisions of this subchapter."); *Strahan v. Coxe*, 127

9   Fed.3d 155, 160 (1st Cir. 1997) (holding that "[t]he MMPA does not authorize citizen suits against a

10  person alleged to be in violation of the Act," the MMPA vests enforcement authority in the Secretary,

11  and thus the District Court had no authority to enforce such a private action.).

12         The legislative history shows that Congress considered allowing citizen suits but the final

13  Senate version of the DPCIA *eliminated all mention of citizen suits*. *Compare* RJN Ex. 8 at 5, l, 16-

14  21(DPCIA, as introduced in January 30, 1990, Section 4(b) of the Senate version of the DPCIA

15  (Senate Bill 2044)), *with* RJN Ex. 9 at § 17890 (Final Enacted Bill, Sec. 901(e)).

16         The current version of DPCIA provides that "[t]he Secretary and the Secretary of the

17  department in which the Coast Guard is operating shall enforce this Act." 16 U.S.C. §§ 1385(e),

18  1826g(a). This directive mirrors MMPA § 1377(a), which provides: "Except as otherwise provided

19  in this subchapter, the Secretary shall enforce the provisions of this subchapter." 16 U.S.C. § 1377(a).

20         As general rule, "[t]he express provision of one method of enforcing a substantive rule

21  suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290

22  (2001). RICO is one method of enforcing a substantive federal rule, but here the RICO allegations

23  are entirely dependent on COSI's purported violations of another, more directly applicable federal

24  rule, the DPCIA. As demonstrated above, the DPCIA is an all-encompassing regulatory statute

25  enforceable by the federal government, including NOAA and the FTC, with numerous administrative

26  remedies. Congress expressly intended federal agencies to enforce the DPCIA's substantive rules

27  through the administrative process.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                              CASE NO. 4:19-cv-02562-JST

1    Courts have dismissed RICO claims where Congress has expressly intended administrative

2  enforcement. For example, in *McCulloch v. PNC Bank*, the plaintiffs attempted to allege a RICO

3  claim based on violations of the Higher Education Act (the "HEA"). *McCulloch v. PNC Bank*, 298

4  F.3d 1217, 1220-1221 (11th Cir. 2002). The Eleventh Circuit found that the HEA did not provide for

5  a private right of action and that the RICO claims were "nothing more than purported HEA violations

6  pled in RICO terms." *Id.* at 1226. The court dismissed the RICO claim, holding that "since Congress

7  did not intend for Plaintiffs to have a private right of action [under the HEA] and instead provided

8  administrative remedies, it follows that Congress could not have intended for that same [conduct] to

9  constitute a violation of the mail and wire fraud statutes." *Id.* at 1226-1227.

10    In *Woolsey v. J.P. Morgan Ventures Energy Corp.*, plaintiffs attempted to plead a RICO claim

11  that was "wholly dependent on the alleged violations of specific provisions of the [Federal Power

12  Act]." *Woolsey v. J.P. Morgan Ventures Energy Corp.*, No. 15CV530-WQH-BGS, 2015 WL

13  6455571, at *9 (S.D. Cal. Oct. 26, 2015), aff'd, 691 F. App'x 308 (9th Cir. 2017). The court held that

14  "[b]ecause [the Federal Energy Regulatory Commission] has exclusive authority to remedy violations

15  of the FPA and the FPA does not confer a private right of action, Defendants alleged violations of the

16  FPA cannot form the basis of a RICO claim." *Id.*

17    The same result is warranted here. Plaintiffs' attempts to convert alleged violations of

18  DPCIA's regulations into a RICO violation is improper. *See Ayres v. General Motors Corp.*, 234

19  F.3d 514, 522 (11th Cir. 2000) (administrative remedies and lack of private right of action made clear

20  "that Congress did not intend to equate a violation of [federal requirements] with the felony of mail

21  or wire fraud [underlying the RICO allegation]").

22    **2.    Plaintiffs fail to allege the existence of an illegal enterprise created for a**

23    **fraudulent or unlawful purpose**

24    Even if there were a private right of action to enforce the MMPA or the DPCIA (there is not),

25  Plaintiffs' attempt to allege a RICO claim would still fail as a matter of law. A RICO claim "requires

26  (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L.*

27  *v. Imrex Co.*, 473 U.S. 479, 496 (1985). In turn, a RICO "enterprise" has three elements: (1) a

28  purpose, (2) associates participating in the enterprise, and (3) a sufficient length of time to permit

- 19 -

1  these associates to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 945-46

2  (2009). Plaintiffs fail to plausibly allege these elements. Specifically, to allege a RICO enterprise,

3  Plaintiffs must distinguish ordinary business conduct from fraudulent conduct. *See In re Jamster*

4  *Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).

5  **a.      Plaintiffs have not, and cannot, allege a fraudulent purpose.**

6  Plaintiffs allege that COSI and the Alleged Co-Conspirators operated an enterprise whose

7  purpose was to label tuna caught with the purse seine and longline fishing methods as "dolphin safe."

8  FAC ¶¶ 144-160.  However much Plaintiffs may dislike purse seine and longline fishing methods,

9  tuna caught using these methods is ***entirely permissible*** under federal law, if appropriate procedures

10  prescribed by federal law are followed. *See Section VI, supra*.

11  Plaintiffs also allege purse seine and longline fishing causes dolphin mortality or harm, and

12  that COSI's suppliers have a financial incentive to sidestep the DPCIA certification requirements.

13  But they have failed to cite to a single certificate that was allegedly falsified.

14  Simply put, Plaintiffs have failed to allege any unlawful or fraudulent conduct.  Instead, their

15  RICO claim is based on conduct that is expressly *lawful* under the MMPA and DPCIA.  Where, as

16  here, no facts support an unlawful purpose, there is no basis for a RICO claim. *Shaw v. Nissan N.*

17  *Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016); *Wimo Labs LLC v. eBay Inc.*, 2016 WL

18  11507382, at *3 (C.D. Cal. Jan. 28, 2016).

19  RICO claims, like this one, are commonly dismissed if the only allegations are that a defendant

20  conducted its routine commercial relationships. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046,

21  1057–58; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prods. Liab.*

22  *Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011).

23  Here, Plaintiffs allege that COSI and the Alleged Co-Conspirators engaged in the ordinary

24  commercial business for their supply chain, each for its own financial gain: the purse seine or longline

25  fishing vessels caught tuna, the captains (and where applicable NOAA observers) certified it as

26  dolphin safe, wholesalers purchased it, importers (where applicable) imported it, COSI canned it, and

27  the distributors distributed it.  When the Alleged Co-Conspirators pursue their own individual

28

- 20 -

1  economic interests, there is no commonality of interest or shared purpose, and thus a RICO claim

2  cannot be stated. *Woodell v. Expedia Inc.*, 2019 WL 3287896, at *8 (W.D. Wash. July 22, 2019).

3      **D.    PLAINTIFFS HAVE FAILED TO PLAUSIBLY SUPPORT THEIR**

4          **GENERAL ALLEGATIONS OF FRAUD AND RICO UNDER RULE 9(b)**

5          Plaintiffs allege that the tuna they purchased from COSI was falsely labeled as dolphin safe.

6  Plaintiffs also allege that COSI's entire tuna supply chain is a fraudulent, industry-wide scheme to

7  sell "dolphin unsafe" tuna. FAC at ¶ 119. Plaintiffs' State Law Claims, however couched, are based

8  on alleged fraud and are subject to the heightened pleading standard under Rule 9(b). Fed. R. Civ. P.

9  9; see also *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

10         As an initial matter, much of the FAC is pled on "information and belief." *See e.g.,* FAC ¶¶

11 132, 136, 145, 150. Such claims fail to satisfy Rule 9(b), as a matter of law. *Arabian v. Organic*

12 *Candy Factory*, No. 17-cv-05410-ODWPLA, 2018 WL 1406608 at *3 (C.D. Cal. March 19, 2018)

13 ("It is well settled that fraud allegations based on 'information and belief' do not satisfy the

14 particularity requirements of Rule 9(b) unless the complaint sets forth the facts on which the belief is

15 founded.").

16         Rule 9(b) also requires Plaintiffs to plead the "who, what, when, [and] where" of alleged fraud.

17 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).    Plaintiffs' conclusory

18 allegations do not satisfy Rule 8, much less the strictures of Rule 9(b). For example, Plaintiffs attempt

19 to infer that because independent observers are not required in fisheries outside of the ETP, and "[a]

20 declaration from the ship's captain suffices[,]" dolphin safe certifications for tuna caught in such

21 fisheries are *per se* falsified by vessel captains.    FAC at ¶ 56.    This conclusory allegation is

22 unsupported by any actual facts, only an alleged speculative "strong financial incentive" to do so and

23 that it is supposedly "relatively simple to do this." FAC at ¶ 57. Dismissal of this case fits the precise

24 purpose of Rule 9(b)—to bar private litigants from "unilaterally imposing upon the court, the parties

25 and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor*

26 *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

27 / / /

28 / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                              CASE NO. 4:19-cv-02562-JST

1      Moreover, "[a]verments of fraud must be accompanied by the who, what, when, where, and

2  how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

3  As discussed above, Plaintiffs' RICO claim fails to plead any illegal enterprise, let alone plead one

4  with particularity. The FAC does not plead specifically with whom COSI allegedly engaged in

5  fraudulent or unlawful activity, when it allegedly committed such acts, where such alleged acts took

6  place or why. Most notably, the FAC fails to identify a single falsified certification that the alleged

7  illegal enterprise purported to produce.

8      Further, Plaintiffs' references to vague sustainability statements on COSI's website are not

9  actionable because they are neither objective representations nor sufficiently measurable. FAC at ¶

10  ¶ 59-62. These statements of puffery that Plaintiffs rely on (*e.g.*, that COSI is "committed to

11  supporting Thai Union's global sustainability strategy") are "generalized, vague, and unspecific

12  assertions . . . upon which a reasonable consumer could not rely." *Glen Holly Entm't, Inc. v. Tektronix*

13  *Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003); *see also*, *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911,

14  at *10-*11 ("dedicated to the highest standards of care for killer whales" not actionable); *Fraker v.*

15  *KFC Corp.*, Case No. 06-C-1284, 2007 WL 1296571, at *3 (S.D. Cal. April 30, 2007) ("highest

16  quality ingredients" nonactionable puffery); *Tylka v. Gerber Products Co.*, Case No. 96-C-1647, 1999

17  WL 495126, at *8 (N.D. Ill. July 1, 1999) ("optimum nutrition" and "most wholesome nutritious safe

18  foods" mere puffery because "nutrition is such a nebulous concept").

19      Because it fails to meet the heightened pleading standard under Rule 9(b), the FAC should be

20  dismissed with prejudice.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

- 22 -

1   **VIII.   CONCLUSION**

2       For all its inflammatory allegations regarding a supposed industry-wide conspiracy to sell

3   "dolphin unsafe" tuna, in actuality, the FAC is devoid of any actionable, plausible theory of injury,

4   leaving Plaintiffs without standing. Even if the FAC alleged a viable, concrete injury, the FAC would

5   still fail as a matter of law because all of the conduct at issue is lawful and expressly authorized under

6   the MMPA and DPCIA. The FAC is also deficient as a matter of law because the State Law Claims

7   are preempted by the MMPA and DPCIA, and there is no private right of action to enforce these

8   federal regulations, leaving Plaintiffs without a RICO claim or any other cause of action.

9   Additionally, Plaintiffs' claims predicated on alleged fraud fail to meet the heightened pleading

10  standard of Rule 9(b). Finally, Plaintiffs' RICO claim fails because it alleges only routine commercial

11  relationships, not an unlawful purpose.   Accordingly, Plaintiffs' FAC should be dismissed in its

12  entirety, with prejudice and without leave to amend.

13

14  DATED:  August 30, 2019                 PARKS & SOLAR, LLP

15

16                                          By:  _____

                                                 ROBERT J. PARKS

17

18                                          VENABLE LLP

19
                                            JESSICA GRANT
20                                          AMIT RANA

21                                          Attorneys for Defendant
                                            *Tri-Union Seafoods LLC dba Chicken of the Sea*
22                                          *International*

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS                                                        CASE NO. 4:19-cv-02562-JST

## CERTIFICATE OF SERVICE

I certify that on August 30, 2019, I filed the foregoing NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND ACCOMPANYING REQUEST FOR JUDICIAL NOTICE with the Clerk of the Court for the United States District Court, Northern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

DATED:  August 30, 2019                    PARKS & SOLAR, LLP


                                           By: _____
                                               ROBERT J. PARKS
                                               Attorney for Defendant
                                               *Tri-Union Seafoods LLC dba Chicken of the Sea*
                                               *International*

-24-