ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
BRADLEY M. BEALL (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
bbeall@rgrdlaw.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
DYLAN I. BALLARD (Cal. Bar No. 253929)
MOLLY LORENZI  (Cal. Bar No. 315147)
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA  94111
Telephone:  415/434-9100
415/434-3947 (fax)
dballard@sheppardmullin.com
mlorenzi@sheppardmullin.com

Attorneys for Non-Party International Seafood
Sustainability Foundation

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA DUGGAN, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TRI-UNION SEAFOODS LLC, d/b/a Chicken of the Sea International, Inc., a California company, <br><br> Defendant. | Case No. 3:19-cv-02562-WHO <br><br> <u>CLASS ACTION</u> <br><br> JOINT DISCOVERY DISPUTE STATEMENT RE: SUBPOENA *DUCES TECUM* TO NON-PARTY INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION |

1    Plaintiffs and non-party International Seafood Sustainability Foundation ("ISSF")

2    respectfully submit the following Joint Discovery Dispute Statement pursuant to the Court's

3    Standing Order for Civil Cases, ¶4.  ISSF consents to this Court hearing this discovery dispute

4    pursuant to Rule 45(f) of the Federal Rules of Civil Procedure.

5    **A.    Plaintiffs' Position**

6    Plaintiffs served a Rule 45 subpoena *duces tecum* ("Subpoena") on ISSF seeking

7    documents relating to Chicken of the Sea, StarKist, and Bumble Bee's (collectively, the "Tuna

8    Companies") dolphin-safe and tuna-sustainability practices that are central to Plaintiffs' claims in

9    this case and in *Gardner v. StarKist Co.*, No. 4:19-cv-02561-WHO.  *See* **Ex. A**.[1]  ISSF initially

10   objected wholesale to the Subpoena.  *See* **Ex. B**.  Through several good-faith meet-and-confers,

11   Plaintiffs and ISSF agreed that ISSF would produce: "(1) all communications between ISSF and

12   the Tuna Companies for the entirety of the alleged Class Period regarding dolphin mortality, and

13   (2) all documents for the entirety of the alleged Class Period regarding FADs, purse seine nets,

14   and longlines as they relate to dolphin mortality."  However, ISSF disputes that Plaintiffs are also

15   entitled to ***any*** documents or communications relating to the Tuna Companies' sustainability

16   practices (or lack thereof), including documents underlying the very audits of the Tuna

17   Companies' fishing vessels that ISSF finances and the Tuna Companies market to purportedly

18   substantiate their sustainability advertising.  In other words, ISSF contends that any document that

19   does not contain some form of the word "dolphin" is not relevant to either case.  ISSF also refuses

20   to produce all documents demonstrating the Tuna Companies' financial support of ISSF (which

21   the Tuna Companies themselves helped create in 2009), claiming instead that "information

22   ***necessary to establish*** the 'financial relationship' between ISSF and the participating companies"

23   is publicly available in Form 990s filed with the IRS.  Plaintiffs request that ISSF be compelled to

24   produce the requested "sustainability" and "financial support" documents sought by the Subpoena.

25   ISSF's refusal to produce documents related to sustainability (but that do not include the

26   word "dolphin") is based entirely on their own interpretation of Plaintiffs' complaints.  But their

27

28   ---
     [1]   Plaintiffs included StarKist and Bumble Bee in their Subpoena for efficiency purposes, so that
     ISSF would not have to respond to potentially three identical subpoenas at different times.

1    interpretation is belied by Plaintiffs' Second Amended Complaint ("SAC") [ECF No. 54], and this

2    Court's denial of StarKist's motion to dismiss in *Gardner*.  In *Gardner*, this Court recognized that

3    plaintiffs' claims are based on StarKist's dolphin safety ***and*** sustainability misrepresentations by

4    concluding that plaintiffs "plausibly plead that StarKist misleads consumers into believing it is

5    more committed to dolphin safety ***and sustainability*** than it really is."  *Gardner v. Starkist Co.*,

6    No. 19-CV-02561-WHO, 2020 WL 1531346, at *4 (N.D. Cal. Mar. 31, 2020) (emphasis added).

7          The fact is that Defendants' widespread dependence on purse seine nets, FADs, and

8    longlines is harmful to dolphins and the marine environment at large.  As alleged in the complaints,

9    even when dolphins are not captured by purse seine nets, the use of those nets in combination with

10   FADs attracts all sorts of marine life to the catch zone and "harms" dolphins and other species.

11   The same is true of longlines that are often baited with dolphins and other large fish harpooned at

12   sea.  The ISSF has all sorts of information on the effects of these fishing methods on the marine

13   environment.  Limiting ISSF's productions to documents that specifically use some variation of

14   "dolphin" will almost certainly exclude a vast number of relevant documents.

15         A further review of the claims in this case make the relevance of these documents even

16   more clear.  ***First***, under the bolded heading "**Chicken of the Sea's MSC Logo and Sustainable**

17   **Fishing Practices Misrepresentations**," Plaintiffs allege that Chicken of the Sea includes on its

18   tuna products, along with its dolphin-safe logo, the "Certified Sustainable Seafood" MSC logo,

19   ***based on the ISSF audits***, SAC, ¶60.  Chicken of the Sea also promotes its own "SeaChange"

20   campaign that supposedly highlights its comprehensive approach to sustainability.  *Id.*, ¶62; *see*

21   *also id*., ¶63 ("Defendant's sustainability representations and its use of the MSC certified

22   sustainability logo are false, deceptive, and/or misleading because it uses longlines and purse

23   seines employing FADs to capture its tuna that kill and/or harm dolphins and other marine life.");

24   *id.*, ¶64 ("Notwithstanding their organizations' names and purported sustainable fishing practice

25   mission statements, neither the ISSF nor the MSC support the banning or effective control of

26   FADs, longlines, or other unsustainable fishing techniques.").  ***Second***, in Count I of the SAC,

27   Plaintiffs allege Chicken of the Sea violated the UCL by "making the dolphin-safe representations

28   and sustainable fishing method representations, and using the MSC logo, which are false,

1  misleading, and/or deceptive[.]" *Id.*, ¶¶117, 119, 122.  Chicken of the Sea's sustainability

2  representations are clearly at issue and evidence regarding the same is highly relevant. *See*

3  *Meneweather v. Powell*, No. 07-CV-04204 SBA (NC), 2012 WL 12995648, at *2 (N.D. Cal.

4  Apr. 4, 2012) ("The question of relevancy [for a Rule 45 subpoena] should be construed liberally

5  and with common sense and discovery should be allowed unless the information sought *has no*

6  *conceivable bearing on the case*.") (emphasis added).

7        Plaintiffs have repeatedly attempted to limit the scope of their Subpoena and suggested to

8  ISSF that the parties craft search terms to locate: (1) documents and communications regarding

9  the audits of the Tuna Companies' fishing vessels, which ISSF pays for and publish their final

10  audit reports; (2) communications with the Tuna Companies concerning FADs, purse seine nets,

11  and longlines; and (3) all financial support from the Tuna Companies to ISSF.  Unfortunately, no

12  matter how much Plaintiffs offer to compromise, ISSF remains obstinate, continuing to object to

13  producing a single "sustainability" document that doesn't include "dolphins."   There is no

14  justification for ISSF's positions and ISSF should be compelled to produce responsive documents

15  to the Subpoena, as modified by Plaintiffs' agreement.

16        **B.      ISSF's Position**

17        Plaintiffs served non-party ISSF with an expansive subpoena requesting—among many

18  other categories—the production of "All documents related to" and all "communications between"

19  ISSF and its members, (Request No. 1), and "All documents and communications concerning"

20  various fishing methods (Requests Nos. 5-8). During the meet and confer process, ISSF explained

21  that these Requests go far beyond the core allegations in Plaintiffs' Complaint, which are about

22  dolphin safety, and would require ISSF to collect, review, process, and produce virtually the

23  entirety of its files. ISSF asked Plaintiffs to narrow the subpoena to the dolphin safety issues that

24  actually underlie Plaintiffs' claims in this litigation, as required when pursuing discovery from

25  non-parties under Rule 45.  Fed. R. Civ. Proc. 45(d)(1) (Plaintiffs must "take reasonable steps to

26  avoid imposing undue burden or expense on a person subject to the subpoena."); *Dart Indus. Co.*

27  *v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980) ("[T]he word nonparty serves as a

28  constant reminder of the reasons for the limitations that characterize 'third-party' discovery.")

1  (internal citations omitted).  Plaintiffs have refused to meaningfully narrow the subpoena, insisting

2  that ISSF produce documents that have nothing to do with dolphins, on the grounds that their

3  Complaint contains several ancillary references to "sustainability."[2]

4        Non-party discovery is not an appropriate vehicle for exploring such ancillary references.

5  The Complaint in this action is about alleged fraudulent statements regarding dolphin safety.  The

6  Complaint seeks relief for consumer fraud resulting from Defendant's alleged failure to disclose

7  dolphin mortality incurred while sourcing tuna for end-user products bearing the "Dolphin Safe"

8  logo.  Each of Plaintiffs' nine claims for relief seeks damages because "Defendant's dolphin-safe

9  representations are false, misleading, and/or deceptive."  *See, e.g.,* Complaint ¶¶ 14, 69, 73.  The

10  Complaint contains ***424 allegations*** about dolphin safety, but ***does not assert a single claim*** related

11  to "sustainability" independent of Defendant's alleged use of dolphin-harming fishing techniques

12  and subsequent alleged use of "dolphin-safe" eco-labels.  ISSF's proposal for narrowing the

13  subpoena to dolphin harm and dolphin mortality would capture everything in ISSF's possession

14  relevant to Plaintiffs' claims.

15        Moreover, Plaintiffs ignore—as they have throughout the meet and confer process—the

16  fact that ISSF, as a 501(c)(3) nonprofit foundation, makes ***publicly available*** documents that

17  respond to every one of Plaintiffs' Subpoena requests.  These documents include technical reports,

18  workshops, infographics, data collections and best practices guides regarding each of the fishing

19  methods listed in the Subpoena; ISSF's detailed IRS filings disclosing financial support from the

20  ISSF participating companies; and the audit protocol and full audit reports for every company that

21  participates in ISSF, among many other documents.  (*See* https://iss-foundation.org).  Plaintiffs

22  have never explained why these public documents are insufficient to meet their requests regarding

23  the auditing of ISSF members, the financial support that ISSF receives, or ISSF's positions on

24

25

---

26  [2]    Plaintiffs also rely on an order from a different case that makes an ancillary reference to the concept of "sustainability."  Nowhere in that order does the Court reject, or even address, the position that ISSF is taking here:  that all of the claims in this action are expressly based on alleged

27  fraudulent statements about dolphin safety, and ISSF's discovery obligations as a non-party should

28  be limited accordingly.

1   FADs, purse seine nets, and longlines (regardless of their connection to the dolphin safety issues
2   raised in this litigation).

3      Plaintiffs specifically insist that ISSF produce all documents relating to audits of the Tuna
4   Companies—a request that appears nowhere in the Subpoena—but those documents are irrelevant,
5   publicly available, and outside ISSF's control. As ISSF has explained, and as the publicly available
6   audits and audit protocol confirm, the audits are irrelevant to Plaintiffs' claims because they do
7   not include *any* dolphin-related criteria, and have nothing to do with dolphin safety or labeling or
8   marketing representations regarding dolphins.  Moreover, ISSF does not conduct the audits or take
9   any role in collecting audit-related information from participating companies.  An independent
10  third party called MRAG Americas conducts each audit, and is solely responsible for interacting
11  with the participating companies. As required under the publicly available audit protocol, all
12  documents collected by MRAG Americas are kept strictly confidential and are not shared with
13  ISSF. ISSF has neither custody nor control over any audit-related document that Defendant may
14  have shared with MRAG Americas.

15     Plaintiffs also insist on the production of "all documents" demonstrating the Tuna
16  Companies' "financial support" of ISSF. Whether the Tuna Companies fund ISSF is irrelevant,
17  because ISSF does not operate any ecolabels, engage in the sale or marketing of tuna, audit
18  compliance with dolphin-related criteria, or otherwise participate in Defendant's representations
19  regarding dolphin safety. To the extent Plaintiffs require this information, ISSF's public Form 990s
20  disclose all regular or significant financial support from the Tuna Companies. Any irregular
21  instances of funding that are not required to be disclosed to the IRS are discoverable from
22  Defendant.

23     For the above reasons, to the extent ISSF is required to produce documents beyond the
24  large number of responsive documents it has made publicly available, the Court should narrow the
25  Subpoena to those document categories that are relevant to Plaintiffs' claims in this action, *i.e.*:
26  (1) all communications between ISSF and the Tuna Companies for the entirety of the alleged Class
27  Period regarding dolphin mortality, and (2) all documents for the entirety of the alleged Class
28  Period regarding FADs, purse seine nets, and longlines as they relate to dolphin mortality.

1    DATED:  May 27, 2020                    ROBBINS GELLER RUDMAN
                                                & DOWD LLP
2                                            STUART A. DAVIDSON (*pro hac vice*)
                                             CHRISTOPHER C. GOLD (*pro hac vice*)
3                                            BRADLEY M. BEALL (*pro hac vice*)

4

5                                                  s/ Stuart A. Davidson
                                                  Stuart A. Davidson
6
                                             120 East Palmetto Park Road, Suite 500
7                                            Boca Raton, FL  33432
                                             Telephone:  561/750-3000
8                                            561/750-3364 (fax)
                                             sdavidson@rgrdlaw.com
9                                            cgold@rgrdlaw.com
                                             bbeall@rgrdlaw.com
10
                                             BONNETT, FAIRBOURN, FRIEDMAN
11                                              & BALINT, P.C.
                                             ELAINE A. RYAN
12                                           CARRIE A. LALIBERTE
                                             2325 E. Camelback Road, Suite 300
13                                           Phoenix, AZ  85016
                                             Telephone:  602/274-1100
14                                           602/274-1199 (fax)
                                             eryan@bffb.com
15                                           claliberte@bffb.com

16                                           BONNETT, FAIRBOURN, FRIEDMAN
                                                & BALINT, P.C.
17                                           PATRICIA N. SYVERSON
                                             MANFRED P. MUECKE
18                                           600 W. Broadway, Suite 900
                                             San Diego, CA  92101
19                                           Telephone:  619/756-7748
                                             602/274-1199 (fax)
20                                           psyverson@bffb.com
                                             mmuecke@bffb.com
21
                                             GOLDMAN SCARLATO & PENNY, P.C.
22                                           BRIAN DOUGLAS PENNY
                                             Eight Tower Bridge, Suite 1025
23                                           161 Washington Street
                                             Conshohocken, PA  19428
24                                           Telephone:  484/342-0700
                                             484/342-0701 (fax)
25                                           penny@lawgsp.com

26

27

28

1

2        ZAREMBA BROWN PLLC
         BRIAN M. BROWN

3        40 Wall Street, 52nd Floor
         New York, NY  10005

4        Telephone:  212/380-6700
         bbrown@zarembabrown.com

5        Attorneys for Plaintiff

6 DATED:  May 27, 2020     SHEPPARD, MULLIN, RICHTER &
         HAMPTON

7

8           *s/ Dylan I. Ballard*
           Dylan I. Ballard

9

10       MICHAEL P.A. COHEN
        2099 Pennsylvania Avenue, N.W., Suite 100

11       Washington, DC  20006-6801
        Telephone:  202/747-1958

12       202/747-1901 (fax)
        mcohen@sheppardmullin.com

13       DYLAN I. BALLARD (Cal. Bar No. 253929)
        MOLLY LORENZI (Cal. Bar No. 315147)

14       Four Embarcadero Center
        Seventeenth Floor

15       San Francisco, CA  94111
        Telephone:  415/434-9100

16       415/434-3947 (fax)
        mlorenzi@sheppardmullin.com

17       dballard@sheppardmullin.com

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Northern District of California

| | |
|---|---|
| TARA DUGGAN, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| TRI-UNION SEAFOODS LLC, dba | ) |
| Chicken of the Sea International, Inc. | ) |
| *Defendant* | ) |

Civil Action No.   19-cv-02562-WHO

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
International Seafood Sustainability Foundation

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Schedule A.

| Place: Robbins Geller Rudman & Dowd LLP<br>905 16th Street N.W., Suite 303<br>Washington, D.C.  20006 | Date and Time:<br><br>04/24/2020 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   03/25/2020

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
_____ , who issues or requests this subpoena, are:

Stuart A. Davidson, Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500, Boca Raton, FL  33432, 561/750-3000, sdavidson@rgrdlaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   19-cv-02562-WHO

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule A

### (International Seafood Sustainability Foundation)

**I.     DEFINITIONS**

All definitions in the Federal Rules of Civil Procedure apply to this Subpoena.  Each undefined term in this Schedule A shall be given its usual dictionary definition, except terms that have acquired a particular meaning within your industry or your company, in which case such meaning shall apply for purposes of this Subpoena.  In addition, as used herein:

1.      "You," "your," and "ISSF" mean the International Seafood Sustainability Foundation and its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of each of them, all past and present directors, officers, employees, agents, representatives, employees, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with each of them, and others acting on behalf of each of them.

2.      "Bumble Bee" means Bumble Bee Foods, LLC and its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of each of them; all past and present directors, officers, employees, agents, representatives, employees, consultants, and attorneys of any of them; all entities acting in joint-venture or partnership relationships with each of them; and others acting on behalf of each of them.

3.      "Chicken of the Sea" means Tri-Union Seafoods LLC (d/b/a Chicken of the Sea) and its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of each of them; all past and present directors, officers, employees, agents, representatives, employees, consultants, and attorneys of any of them; all entities acting in joint-venture or partnership relationships with each of them; and others acting on behalf of each of them, including, but not limited to, Thai Union North America, Inc. and Thai Union Group PLC.

4.     "Concerning" means, in whole or in part, constituting, containing, relating to, embodying, reflecting, describing, involving, supporting, contradicting, evidencing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

5.     "Document" is synonymous in meaning and scope to the term in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and all materials that constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence.   The term includes electronically stored information (defined below), including all electronic communications (*e.g.*, emails and attachments), files, data and databases, books, pamphlets, periodicals, letters, memoranda, telegrams, reports, records, studies, handwritten notes, maps, drawings, working papers, charts, papers, graphs, indices, tapes, data sheets or data processing cards, telephone records or logs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matters, however produced or reproduced, to which you have or have had access.   "Document" also includes the original and any copy that is not identical to any other copies of documents regardless of its origin or location.   The phrase "all documents" means every document or group of documents as defined above, that are known to you, or that can be located or discovered by reasonably diligent efforts.

6.     "Electronically stored information" or "ESI" means any portion of data available on a computer or other device capable of storing electronic data (including, but not limited to, any data on magnetic or optical storage media stored as an active file or backup file, in its native format).   "Electronically stored information" or "ESI" includes emails, spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data.   Devices capable

2

of storing ESI include servers, desktop computers, portable computers, handheld computers, tablets, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, cell phones, smartphones, personal data assistants, and any other forms of online or offline storage, whether on or off your premises.

7.      "FAD" means a fish-aggregating device.

8.      "StarKist" means StarKist Co. and its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of each of them; all past and present directors, officers, employees, agents, representatives, employees, consultants, and attorneys of any of them; all entities acting in joint-venture or partnership relationships with each of them; and others acting on behalf of each of them, including, but not limited to, Dongwon Industries and Dongwon Group.

9.      "Tuna Companies" means StarKist, Bumble Bee, or Chicken of the Sea.

10.     "Tuna Products" means any cans, pouches, cups, or other packaged, shelf-stable tuna distributed for retail sale in the United States.

11.     The phrase "documents sufficient to show" means both documents that are necessary and documents that are sufficient to provide the specified information.

12.     The term "including" shall be without limitation.

13.     The terms "each" and "any" shall mean "any and all."

14.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request more inclusive.

15.     The singular form of a word shall include the plural and vice versa.

## II.      INSTRUCTIONS

In addition to the requirements set forth in the Federal Rules of Civil Procedure, which Plaintiffs incorporate herein, the following instructions apply to each of the document requests set forth below, and are deemed to be incorporated in each of said requests.

1.     Responsive data maintained electronically should be produced in one of the following electronic formats: Excel, Comma Separated Values, or Text File (either tab delimited or pike delimited).  For each data field of transaction data produced, a complete description of the contents of that data field and the units of measurement used should be supplied.  Each data field should be reported using a common unit of measure.  If the data field contains coded values, then provide a table or code sheet sufficient to understand or interpret those values.  If transaction data is produced with different data fields arranged in separate database tables or files, then insure that the data fields exist in each table or file so that the tables or files can be linked together.  Also provide a description of which data fields in each database table or file can be used to perform that link.

2.     These document requests shall be deemed to be continuing in nature so that if you or any person acting on your behalf subsequently discovers or obtains possession, custody, or control of any document previously requested or required to be produced, you shall promptly make such document available. Each supplemental response shall be served on Plaintiffs no later than 30 days after the discovery of the further information.

3.     These requests include data and information stored electronically or magnetically. To the extent responsive documents or data are maintained in an electronic format, including, but not limited to, on a disk, tape, hard drive, flash drive, steady state drive, or other magnetic or machine-readable format, please produce the electronic version along with manuals and all other documents sufficient to operate, display, read, and interpret the programs, documents, or data.

4.     You should construe these requests as follows: (a) the singular includes the plural and the plural includes the singular; (b) the masculine, feminine, or neuter pronoun includes the other genders; (c) the conjunctions "and" and "or" should be read either disjunctively or

conjunctively to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (d) the words "any" and "all" shall include "each and every"; and (e) the present tense of a verb includes its past tense and vice versa.

5.      These document requests require that all documents created, generated, or dated during the relevant time period (defined below), as well as documents created, generated, or dated outside this period, but which contain information concerning this period or were referred to by documents responsive to these document requests, be produced by you.

6.      In producing documents and ESI, you are to furnish all documents or ESI in your possession, custody, or control, regardless of the physical location of the documents or whether or not such documents or materials are possessed directly by you.

7.      In producing documents and ESI, you are requested to produce the original of each document or item of ESI requested, together with all non-identical copies and drafts of such document. If the original of any document or item of ESI cannot be located, a copy shall be produced in lieu thereof, and shall be legible and, for a document, bound or stapled in the same manner as the original.

8.      All documents or things that respond, in whole or in part, to any portion of these requests are to be produced in their entirety, including all attachments and enclosures.  Documents attached to each other, and email messages and their attachments, should not be separated.

9.      Documents or ESI not otherwise responsive to these requests shall be produced if such documents or ESI mention, discuss, refer to, or explain the documents that are called for by these requests, or if such documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations, or similar materials.

10.    All documents and ESI shall be produced in the same order as they are or were kept or maintained by you in the ordinary course of your business.  If any documents or items of ESI have been removed from the files in which they were found for purposes of producing them in response to these requests, indicate for each document the file(s) from which the document(s) was (were) originally located.

11.    All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by you. If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.

12.    Documents and ESI shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document custodian(s).

13.    Documents attached to each other should not be separated, including, but not limited to, email attachments.

14.    If a document or item of ESI once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details concerning its loss.

15.    All documents produced in paper form should be numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

16.    Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian.

17.    If you object to any part of these document requests, please: (a) state each objection you assert in sufficient detail to permit the Court to determine the validity of the objection; and (b) produce all responsive documents to which your objection does not apply.

18.    If you claim that any part of these document requests is vague or ambiguous, please identify the specific language you consider vague or ambiguous and state the interpretation of the language in question you used to frame your response.

19.    If any documents are redacted on a basis other than privilege, provide the information and reason for redacting that document in sufficient detail to allow other parties to assess the validity of the claim for redaction.

20.    If you redact any portion of the document, stamp the word "REDACTED" beside the redacted information on each page of the document which you have redacted.

21.    If you claim the attorney-client privilege or any other privilege or work product protection for any document, provide a detailed privilege log that contains at least the following information for each document or portion of document withheld or redacted on such grounds: (a) the date of the document or item of ESI; (b) the identity of each and every author of the document or item of ESI; (c) the identity of each and every person who prepared or participated in the preparation of the document or item of ESI; (d) the identity of each and every person who received the document or item of ESI; (e) the identity of each and every person from whom the document or item of ESI was received; (f) a general description of the subject matter; (g) the present location of the document or item of ESI and all copies thereof; (h) the identity of each and every person having custody or control of the document or item of ESI and all copies thereof; (i) the identity of the numbered request(s) to which the document or item of ESI is responsive; and (j) sufficient

information concerning the document or item of ESI and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

22.     If you assert privilege with respect to part of a responsive document or item of ESI, redact the privileged portion and indicate clearly on the document where the material was redacted. Produce the redacted document or item of ESI even if you believe that the non-redacted portion is not responsive.  Identify the redacted portions on the privilege log in the same manner as withheld documents.  Non-responsiveness of a portion of a document or item of ESI is not a sufficient basis for redaction.

23.     These requests seek all responsive documents and materials during the relevant time period that are applicable to or concerning the matters and subjects referenced therein, regardless of whether the particular responsive document or item of ESI was created or generated during the relevant time period.

## III.     FORM OF PRODUCTION

1.     Except for the types of documents requested in native format below, ESI should be produced as single-page, black and white, 300 DPI, 1 bit Group IV TIFF images for each page of each document, with each image file named after the production number of that page, with extension ".tif."

2.     To the extent reasonably possible, the imaged data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (*i.e.*, portrait to portrait and landscape to landscape).  Word processing documents will be processed to TIFF format and imaged showing track changes or edits, comments, notes, and other similar information.

3.     Embedded files should be included in the production.

8

4.      To the extent a document is not already unitized, you should undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as in their original form when creating the image files.  You should undertake reasonable efforts to ensure that distinct documents are not merged into a single record and that single documents are not split into multiple records.

5.      Text files should be produced as one file per document, named after the starting production number assigned to the document and ending with extension ".txt," with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file.  With the exception of TIFF, PDF, and other image file types for which the text cannot be extracted, the text of documents should be extracted directly from the native file without using Optical Character Recognition ("OCR"), except in the case of redacted documents. Documents produced in redacted form should not have text files populated with extracted text but should, instead, have text files populated with OCR data which will not contain the redacted data. If a document does not contain extractable text, you should provide OCR files for that document to the extent possible.

6.      Data containing color need not initially be produced in color.  Reasonable requests for data containing color should be honored, if the original data contains color necessary to understand the meaning or content of the data, including, but not limited to, photos, graphs, and charts, and which will be produced as single-page 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.

7.      Electronic documents attached to an e-mail or electronic document and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document.   Non-relevant attachments may be

excluded from production, but non-relevant parent documents with relevant attachments must be produced.  All non-relevant attachments excluded from production should be produced as a slipsheet or placeholder with file name information provided on the face of the slipsheet and in the accompanying metadata.  Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved.  A document and all other documents in its attachment range constitutes a family group.  Each document shall be produced with the production number for the first and last page of that document in the "BEGNO" and "ENDNO" fields of the data load file and with the "BEGATTACH" and "ENDATTACH" fields listing the production number for the first and last page in the document family.

8.      Each of the metadata and coding fields set forth in the attached **Table 1** that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces. All metadata pertaining to dates and times will be standardized to Coordinated Universal Time (UTC).

9.      Production numbers shall be branded to the lower right hand corner of TIFF images and confidentiality designations (if applicable) shall be electronically branded or burned to the lower left hand corner of TIFF images so that they legibly print with the images.  If one or more production numbers is skipped in a production, you will so note in a cover letter accompanying the production or in a privilege log.  Reasonable efforts should be used to ensure that production numbers: (a) are unique and consistent across the entire production, provided, however, that parties may use multiple prefixes to reflect productions from separate entities or related to specific experts; (b) maintain a constant prefix and page length (0-padded) across the production, consistent with the requirements of sub-paragraph (a); (c) contain a prefix that clearly identifies the producing

party; (d) contain no special characters or embedded spaces; and (e) are sequential within a given document. Attachments will immediately follow the production number(s) for the parent document. Production number prefixes shall be consistent across all documents a party produces in the litigation. However, to the extent you produce documents as they were produced in prior proceedings, the documents shall retain their numbering from the prior proceedings.

10. Accompanying image load/unitization files and delimited text files should be produced with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."

11. Where TIFF images of certain electronic documents are not readable, you may produce such documents in native format. To the extent a document is not adequately represented in TIFF image format, the receiving party may request that the file or document be produced in native format by identifying the document by production number, the production of which shall not unreasonably be withheld.

12. Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be produced in their native format.

13. Spreadsheets, including Microsoft Excel Spreadsheets, Microsoft Access, and Google Sheets, shall be produced in native format with a single-page TIFF slipsheet/placeholder document that contains the native file name and a Bates number in its place. These will be produced with a link to the native file in the "NATIVELINK" field, along with all extracted text and applicable metadata fields set forth in **Table 1**. If a spreadsheet requires redactions, the

redactions should be implemented while also ensuring that proper formatting and usability are maintained.

14.     Presentation files, including Microsoft PowerPoint, Google Slides, and other electronic slide programs, shall be produced in native format.  These should be produced with a link to the native file in the "NATIVELINK" field, along with all extracted text and applicable metadata fields set forth in **Table 1**.  For presentation files, hidden slides will be revealed and all slides will be printed in Slide and Notes view (one slide per page) with the slide appearing at the top of the page and the notes appearing at the bottom of the page.  If a presentation file requires redactions, you may produce as TIFF images processed in accordance with the formatting specified for TIFF images and should be processed with hidden slides and all speaker notes unhidden and processed to show both the slide and the speaker's notes on the image.

15.     You may produce data files that require large text extractions, such as XML and XPD files, in native format.

16.     The native files shall be renamed with the Bates prefix-Bates number.

17.     Where native files are produced in lieu of TIFF images, each native file will be assigned a unique production number.  You should produce a placeholder (a single-page TIFF slipsheet indicating that the native item was produced) along with the file itself in native format; provided that, in lieu of producing a placeholder, you may produce TIFF or JPEG images of PowerPoint or other presentation files in addition to producing native files.  The placeholder will be branded with the production number in the lower right hand corner, the original filename of the native file, and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. You should also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

12

18.     To the extent that any file identified for production in native format contains information subject to a claim of privilege or any other applicable protection that requires redaction, you may convert that file to TIFF format and produce it with the necessary redactions, along with OCR text that reflects such redactions.  All such OCR text will be Unicode-compliant (UTF-8) to the extent practical.  For spreadsheet files, and for other files where such conversion renders the document not reasonably usable, you should produce the document in a reasonably usable form to be agreed upon by the respective parties.  The portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes.  The label "REDACTED" shall appear on the face of the redacted portion of the TIFF image.  The redacted TIFF image shall be produced in accordance with the image load file specifications above, and any other provisions for the production of TIFF images contained herein.  Redacted text shall not be included in the text file for that redacted TIFF image.  The original unredacted native file shall be preserved pending conclusion of this action.

19.     You will make reasonable efforts to remove passwords or other security protection from any native file prior to production.  If the security protection cannot be removed from a native file after reasonable efforts by the producing party, a placeholder TIFF image may be produced in place of the native file indicating that security protection could not be removed from the data.

20.     You should de-duplicate only exact duplicates based on MD5 hash values at the family level.  De-duplication shall not break apart families.  An e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in the "bcc" or other blind copy field.  Alternatively, you may produce the e-mail containing the bcc by itself.  If you are de-duplicating across custodians, you shall populate a field

of data that identifies each custodian who had a copy of the produced document (the "CUSTODIAN-ALL field") in addition to a separate field of data identifying the custodian whose document is produced.  If you are de-duplicating within custodians only, there is no need to create or provide the CUSTODIAN-ALL field.

21.    If you intend to use TAR/predictive coding for the purpose of identifying or culling the documents to be reviewed or produced, this intention will be disclosed prior to using any such technology and with ample time to meet and confer as to the technology to be used and come to an agreement on the search protocol.

22.    If a response to discovery requires production of ESI contained in a database or comprehensive electronic accounting system, you shall meet and confer with the requesting party concerning a reasonable method of production.  To the extent reasonably available, you shall also provide any data dictionary, key, or other information sufficient to provide a reasonable understanding of the contents of the database or accounting system.

23.    With respect to documents that exist in hard-copy format, you should image and produce such documents as TIFF images.  Where paper scanned images have identification spines, file folder labels, "post-it notes," or any other labels, the information on the label shall be scanned and produced to the extent practicable.  In addition, folder labels, box labels, or binder labels (including spines), or other similar top-level identifiers, to the extent practicable, shall be manually recorded at the time of scanning and coded in the Binder and/or Folder field.  Reasonable requests for documents containing color should be honored, if the original data contains color necessary to understand the meaning or content of the document, including, but not limited to, photos, graphs, and charts, and which will be produced as single-page 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Load files for such productions

shall include data relevant to the individual documents, including Bates numbering, custodian, OCR, and folder labels and box labels that have been manually recorded.

24.     To the extent you produce materials that were previously produced in a different action or proceeding, you shall disclose prior to production how such materials were produced in the previous action.  You may produce materials as they were produced in the prior action or proceeding, but will meet and confer with the receiving party regarding any additional metadata overlays or alternative formats that may be required in order to make the materials reasonably usable.

## IV.     RELEVANT TIME PERIOD

Unless otherwise stated, each paragraph in this Subpoena covers the period of time **March 1, 2009 to present**.  If a document prepared before or after this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## V.     DOCUMENTS REQUESTED

1.     All documents related to, and communications between or among, the ISSF on the one hand and any of the Tuna Companies on the other hand.

2.     All documents and communications related to the ISSF's relationship (financial or otherwise) with any of the Tuna Companies, including documents sufficient to show all money or thing(s) of value received from any of the Tuna Companies.

3.     All documents and communications related to the ISSF's role in any of the Tuna Companies' marketing or sale of Tuna Products as dolphin-safe.

4.     All documents and communications related to the ISSF's role in any of the Tuna Companies' marketing or sale of Tuna Products as sustainably sourced.

15

5.      All documents and communications concerning FADs.

6.      All documents and communications concerning bycatch.

7.      All documents concerning long lines.

8.      All documents concerning purse seine nets.

9.      All documents and communications relating the Tuna Companies' marketing or sale of Tuna Products as dolphin-safe.

10.      All documents and communications relating to the Tuna Companies' marketing or sale of Tuna Products as sustainably sourced.

11.      All documents and communications related to Pacifical's request for certification of any Tuna Product by the Marine Stewardship Council.

12.      All documents and communications related to any other request by any tuna company (not limited to the Tuna Companies as defined herein) for certification of any Tuna Products by the Marine Stewardship Council.

13.      All documents related to the dispute between the United States and Mexico before the World Trade Organization in the matter DS381: United States – Measures Concerning the Importation, Marketing and Sale of Tuna and Tuna Products.

**TABLE 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH-ALL | i.e. ./JSmith.pst/Inbox<br>./Jsmith.pst/Deleted Items<br>/Network Share/Accounting/…<br>./JSmithPC/Users/JSmith/My Documents/… | The file paths from the locations from which the items were stored in the usual course of business.  This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>: tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>: tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>: tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN | Smith, Joe: Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | YES, NO | If a document contains a redaction, this field will display 'YES'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.  **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT "B"

**Sheppard**Mullin

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com


Dylan Ballard
415.774.2914 direct
dballard@sheppardmullin.com

April 7, 2020

**VIA E-MAIL**

Stuart A. Davidson
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
sdavidson@rgrdlaw.com


Re:     *Duggan, et al. v. Tri-Union Seafoods LLC* (Case No. 19-cv-02562-WHO)


Dear Stuart:

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), non-party International Seafood Sustainability Foundation (ISSF) objects to Plaintiffs' Subpoena to Produce Documents (Subpoena), served on March 25, 2020.

**I.      Plaintiffs Have Failed to Tailor Their Requests to Avoid Imposing an Undue Burden or Expense on Non-Party ISSF: All Requests**

The Subpoena does not comply with the Federal Rule of Civil Procedure 45(d)(1) requirement that a party or responsible attorney issuing a non-party subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Rule 45 imposes both a duty on the issuing attorney to avoid misuse of subpoena power, and a duty on the court to protect non-parties from undue burden.  *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (amendment's purpose was to "enlarge the protections afforded persons who are required to assist the court by giving information or evidence" and clarify that "[t]he liability of the attorney [for misuse of the subpoena power] is correlative to the expanded power of the attorney to issue subpoenas").

Because non-parties are "powerless to control the scope of litigation and discovery," they "deserve extra protection from the courts."  *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995); *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW NC, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("Both the language of Rule 45(c)(1) and that of the Ninth Circuit in *C.B.S.* make it clear that sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party.").

**Sheppard**Mullin

Stuart A. Davidson
April 7, 2020
Page 2

Plaintiffs' Subpoena to ISSF does not comply with these threshold standards and seeks to impose obligations far beyond the requirements of the Federal Rules of Civil Procedure.

The complaint in this litigation seeks relief for consumer fraud resulting from Chicken of the Sea's alleged failure to disclose dolphin mortality incurred while sourcing tuna for end-user products bearing the "Dolphin Safe" logo.  ISSF's mission and objectives are not relevant to these claims or potential defenses in this litigation.

ISSF does not independently conduct scientific research regarding dolphin mortality, monitor compliance with the Dolphin Safe logo or Dolphin Protection Consumer Information Act (DPCIA), or engage in the marketing or sale of tuna products.

ISSF is a 501(c)(3) nonprofit foundation that conducts and facilitates science-based initiatives for the long-term conservation and sustainable use of global tuna stocks, reducing bycatch and promoting tuna ecosystem health.  ISSF's primary activities include: (1) supporting Regional Fisheries Management Organizations (RFMOs) in achieving their objectives of tuna stock and ecosystem conservation; (2) advocating for science-based management measures that promote sustainable tuna stocks and ecosystems; (3) promoting scientific analysis of maximum sustainable yields of targeted tuna stocks that support the health of the marine ecosystem; and (4) providing scientific resources to support certification programs that meet the United Nations Food and Agriculture Organization eco-labeling guidelines.  ISSF also reports the results of independent audits conducted of participating companies measured against Conservation Measures the ISSF Board has passed in these areas.  *See Advancing Sustainable Tuna Fisheries*, https://iss-foundation.org/download-monitor-demo/download-info/advancing-sustainable-tuna-fisheries-a-five-year-plan (last accessed Apr. 7, 2020).

As a 501(c)(3) organization, ISSF is obligated to meet Internal Revenue Service disclosure requirements, including submitting annual, publicly available Form-990 returns that describe ISSF's mission, service accomplishments, governing body and policies, and financial activity. And ISSF ensures that materials relevant to its mission and objectives are accessible to the public through its website, including the following:

- Governance documents describing the ISSF staff, Board of Directors, bylaws, strategic plan, committees, and past and present annual reports (*Governance*, https://iss-foundation.org/who-we-are/governance/ (last accessed Apr. 6, 2020));
- List of participating companies (*Participating Companies: Partners in Sustainability*, https://iss-foundation.org/who-we-are/participating-companies/ (last accessed Apr. 6, 2020));
- Description of and resources relating to each ISSF area of focus (tuna conservation, bycatch, illegal fishing, and capacity management) (*Areas of Focus*, https://iss-foundation.org/what-we-do/areas-of-focus/ (last accessed Apr. 6, 2020));
- Interactive and customizable stock status tool that collects historical data from 2011 through March 2020 assessing the health of 23 commercial tuna stocks worldwide (*Interactive Stock Status Tool*, https://iss-foundation.org/about-tuna/status-of-the-stocks/interactive-stock-status-tool/ (last accessed Apr. 6, 2020));

**Sheppard**Mullin

Stuart A. Davidson
April 7, 2020
Page 3

- RFMO position statements (*Position Statements*, https://iss-foundation.org/what-we-do/influence/position-statements/download-category/position-statements/?orderby=date (last accessed Apr. 6, 2020));
- ISSF Conservation Measures and commitments, participating company compliance and audit reports, and the ISSF Proactive Vessel Register (*Verification*, https://iss-foundation.org/what-we-do/verification/ (last accessed Apr. 6, 2020));
- Interactive tool designed for fishery improvement projects (FIPs) that matches ISSF resources to Marine Stewardship Council (MSC) Performance Indicators (*Fisheries Improvement*, https://iss-foundation.org/what-we-do/fisheries-improvement/ (last accessed Apr. 6, 2020)); and
- Publications including technical and meeting reports, non-entangling fish aggregating device (FAD) resources, skipper and observer guidebooks, RFMO best practices snapshots, and NGO Tuna Forum guides (*Knowledge and Tools*, https://iss-foundation.org/knowledge-tools/ (last accessed Apr. 6, 2020)).

These materials are therefore already accessible to plaintiff.

ISSF is not a certification body, is not related to any certification body, and does not conduct sales or marketing activities for tuna products or assist participating companies in those activities.

ISSF has not conducted any research on the dolphin fishery and has no confidential data specific to this fishery.  All ISSF technical reports – including those that study bycatch – are peer-reviewed publications that are available to the public.

ISSF led a Tuna-Dolphin workshop in connection with the Eastern Tropical Pacific (ETP) tuna fishing practice of setting on dolphins, addressed by the U.S. Marine Mammal Protection Act and DPCIA.  The full results of that workshop are reported on ISSF's website and already available to the plaintiff.  *See* Restrepo, Victor, *Chair's Report of the ISSF Tuna-Dolphin Workshop*, ISSF (Oct. 26, 2012), https://iss-foundation.org/download-monitor-demo/download-info/chairs-report-of-the-issf-tuna-dolphin-workshop/.

Notably it does not appear Plaintiffs' complaint is based on this ETP issue.

## II.     The Subpoena Seeks Documents That Are Not Relevant to Any Claim or Defense in This Litigation: Request Nos. 1-2, 4-8, and 10-13

ISSF objects to the Subpoena to the extent it calls for documents that are not relevant to any claims or defenses in this litigation.  *See* Fed. R. Civ. P. 26(b)(1) ("the scope of discovery is . . . any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").  At issue in Plaintiffs' complaint is whether Chicken of the Sea engaged in consumer fraud by using the "Dolphin Safe" logo on its end-user tuna products.

Subpoena Request Nos. 1-2, 4, and 10-13 seek documents relating to ISSF's relationship with Chicken of the Sea, StarKist, or Bumble Bee (the "Tuna Companies"); ISSF's role in the marketing or sale of sustainable tuna products; the Tuna Companies' marketing or sale of

**Sheppard**Mullin

Stuart A. Davidson
April 7, 2020
Page 4

sustainable tuna products; requests for MSC certification by any tuna company; and the United States-Mexico international trade dispute before the World Trade Organization (WTO Matter No.DS381).  Subpoena Request Nos. 5-8 seek documents regarding FADs, bycatch, long lines, and purse seine nets – all common concepts of commercial fishing that are not singularly applicable to a particular species or fishery.

None of these topics inform or address Plaintiffs' claims regarding dolphin mortality, compliance with the DPCIA, or the preparation, marketing, or sale of "Dolphin Safe" tuna products, nor are the requests limited to the dolphin mortality subject matter of the complaint.

### III.    The Subpoena Seeks Documents Outside ISSF's Control and/or Easily Available From Other Sources: Request Nos. 3-4 and 9-13

ISSF objects to the Subpoena's request for documents that are not in the possession, custody, or control of ISSF.

Subpoena Request Nos. 3-4 and 9-10 seek documents related to the Tuna Companies' marketing or sale of dolphin-safe or sustainably sourced tuna.  ISSF Conservation Measure 2.3 requires participating companies to identify species of tuna and ocean of capture on branded products.  *See 2.3 Product Labeling by Species and Area of Capture*, https://iss-foundation.org/what-we-do/verification/conservation-measures-commitments/traceability-data-collection-2-3-product-labeling-by-species-and-area-of-capture/ (last accessed Apr. 7, 2020).  ISSF does not conduct sales or marketing activities for participating companies or assist in the marketing or sale of any commercial good.

Subpoena Request Nos. 11-12 seek documents that are outside ISSF's control or freely available from sources other than ISSF, including public sources.  Those Requests seek "all documents" related to requests by Pacifical or any other tuna company for MSC certification.  ISSF does not assess or certify fisheries.  ISSF prepares publicly available scientific and technical reports that companies may choose to use as guidance in seeking MSC certification, and engages as a stakeholder in MSC assessments of tuna fisheries. ISSF submits all stakeholder comments through the MSC process, and understands that MSC makes such comments available to the public.  *See Track A Fishery*, https://fisheries.msc.org/ (last accessed Apr. 6, 2020).

Subpoena Request No. 13 seeks documents related to WTO Matter No. DS381.  ISSF was not a party to and did not participate in this matter.

To the extent relevant documents responsive to Subpoena Request Nos. 3-4 and 9-13 exist, they are more readily available from parties to this litigation and/or other non-parties.

### IV.    Plaintiffs' Requests Are Overbroad and Unduly Burdensome: Definitions and Request Nos. 3-13

ISSF objects to Subpoena definitions and requests that are overbroad and unduly burdensome.

**SheppardMullin**

Stuart A. Davidson
April 7, 2020
Page 5

The Subpoena defines "ISSF," "Bumble Bee," "Chicken of the Sea," and "StarKist" to include predecessors, subsidiaries, affiliates, and past and present directors, officers, employees, agents, representatives, employees, consultants, attorneys, joint venture or partner entities, and anyone else acting on their behalf.  ISSF does not have the resources available to determine each organization and individual that falls under these definitions, nor do the Federal Rules of Procedures require ISSF to make such a determination.

The eleven-year "Relevant Time Period" defined in the Subpoena is also overbroad.  It extends far beyond the scope of the applicable statute(s) of limitation and Class Period defined in Plaintiffs' Second Amended Complaint, and includes documents prepared before and after the defined time period.

Subpoena Request Nos. 5-8 seek "all documents" related to "FADs," "bycatch," "long lines" and "purse seine nets."  These requests are so broad as to cover nearly every effort and objective that ISSF undertakes in furtherance of its science-based and advocacy initiatives regarding global tuna stocks, without any limitation to the dolphin mortality question that is the subject matter of the complaint.

Subpoena Request Nos. 3-4 and 9-13 seek documents that are outside ISSF's control and/or are easily available from other sources.  It is unduly burdensome to require ISSF to search for documents that are publicly available, or in the custody of parties to this litigation and/or other non-parties.

ISSF is a nonprofit foundation with nine staff members, the majority of whom are scientists.  ISSF does not have an in-house legal department, and does not have the resources available to prepare a response with no relevance to the claims and defenses at issue in this litigation.

## V.      ISSF Objects to Every Definition, Instruction, and Request to the Extent It Otherwise Purports to Exceed the Scope of Federal Civil Discovery: All Definitions, Instructions, and Requests

ISSF further objects to the Subpoena to the extent that any definition, instruction, or request purports to:

- Call for the disclosure of privileged or immune information, including without limitation information subject to the attorney-client privilege, work product doctrine, or any other privilege or immunity from discovery;

- Seek documents or information regarding conduct outside the statute of limitations;

- Call for the disclosure of trade secret or other confidential research, development, or commercial information; or

- Seek information the disclosure of which would violate the privacy rights of a third party.

**Sheppard**Mullin

Stuart A. Davidson
April 7, 2020
Page 6

Sincerely,

Dylan Ballard
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:    Michael P. A. Cohen
       Molly Lorenzi

SMRH:4821-0879-2248.8

1

<u>CERTIFICATE OF SERVICE</u>

2
3
4
5
6

I hereby certify that on May 27, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

7
8

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 27, 2020.

9
10

<span style="text-decoration: underline;">s/ Stuart A. Davidson</span>
STUART A. DAVIDSON

11
12
13
14

ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com

15
16
17
18
19
20
21
22
23
24
25
26
27
28

JT. DISC. DISPUTE STMT RE: SUBP. *DUCES TECUM* TO NON-PARTY ISSF - 3:19-cv-02562-WHO

Cases\4839-0443-5901.v1-5/27/20