BONNETT, FAIRBOURN, FRIEDMAN
  &amp; BALINT, P.C.
PATRICIA N. SYVERSON (203111)
600 W. Broadway, Suite 900
San Diego, CA 92101
Telephone: 619/756-7748
602/274-1199 (fax)
psyverson@bffb.com
mmuecke@bffb.com
     – and –
ELAINE A. RYAN
CARRIE A. LALIBERTE
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)
eryan@bffb.com
claliberte@bffb.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA DUGGAN, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>  vs.<br><br>TRI-UNION SEAFOODS LLC, d/b/a Chicken of the Sea International, Inc., a California company,<br><br>                Defendant. | Case No. 4:19-cv-02562-WHO<br><br><u>CLASS ACTION</u><br><br>STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

This Stipulation and Order Re: Discovery of Electronically Stored Information will govern how the parties manage electronic discovery in the above-captioned case.

## I. PRESERVATION

Consistent with the parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure and the Northern District of California's Guidelines for the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information, the parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation.

## II. IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. Consistent with the Northern District of California's Guidelines for the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information, the parties will meet and confer within a reasonable period of time after entry of this Stipulated Order regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g*., search terms, technology-assisted-review, predictive coding). The parties agree that the grounds for objections should be supported by specific information. The parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A. Sources

The parties will meet and confer within a reasonable period of time after entry of this Stipulated Order to disclose and discuss the custodial and non-custodial data sources likely to contain responsive information. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from

1  additional custodial or non-custodial sources be searched and meet and confer regarding such
2  request.

### B.  Identification of Custodians

In connection with the parties' meet and confer efforts, the parties shall identify all persons whose files are likely to contain documents and electronically stored information ("ESI") relating to the subject matter of this litigation.  This will include a description of the proposed custodians' job title and brief description of such person's responsibilities (including dates of employment by the applicable party).  The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such requests.

### C.  Easily Segregable Documents

Any known and readily identifiable responsive documents shall be produced (or logged if withheld on privilege) regardless of whether they fall within the parties' agreed upon search parameters.  Documents or categories of documents that are easily identifiable and segregable shall be collected without the use of search terms or other agreed-upon search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review).  Where potentially responsive ESI shall be searched through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

### D.  Search Terms

Where the parties agree that potentially responsive ESI shall be searched through the use of search terms, the parties shall use the process identified below. To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc.  The parties will agree on a date for the simultaneous exchange of search terms.  The parties will then meet and confer to discuss the proposed search terms and mutually agree on the appropriate search terms to be utilized for the potentially responsive ESI.

Upon receipt of the additional search terms, the producing party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular

1  term and no other term on the list), and the total number of documents that would be returned by
2  using the proposed search term list, including families). The parties shall meet and confer
3  regarding the proposed search terms within a reasonable period of time after receipt of the search
4  term hit list to agree on a set of search terms.

5  If disputed terms still exist at the end of the meet-and-confer process, the parties will submit
6  those terms to the Court in the form of a joint discovery letter with a discussion of the relevance
7  and/or burden associated with those search terms.

8    **E.**  **Technology-Assisted-Review**

9  No party shall use predictive coding/technology-assisted-review for the purpose of culling
10 the documents to be reviewed or produced without notifying the opposing party prior to use and
11 with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the
12 use of such technologies.

13 **III.**  **PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

14 Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images
15 with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database
16 load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and
17 "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not
18 be merged into a single record, and single documents shall not be split into multiple records) and
19 be produced in the order in which they are kept in the usual course of business. If an original
20 document contains color, and the color is necessary to understand the meaning or content of the
21 document, the document shall be produced as single-page, 300 DPI JPG images with JPG
22 compression and a high quality setting as to not degrade the original image. Multi-page OCR text
23 for each document should also be provided. The OCR software shall maximize text quality.
24 Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

25 **IV.**  **PRODUCTION OF ESI**

26   **A.**  **Format**

27 The parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI
28 TIFF images with the exception of spreadsheet and presentation type files, source code, and audio

1  and video files, which shall be produced in native format.  Documents that contain track changes
2  will be produced in TIFF format initially, and thereafter the parties may request that individual
3  documents containing track changes be produced in native format as well.  Where a document
4  containing color is produced in Black & White, each party reserves the right to request the
5  Producing Party to re-produce the original as color image(s), single page, color Joint Photographic
6  Experts Group (JPEG or JPG) file. Type-2 (24 bit) .TIFF color images are not acceptable.  The
7  parties may separately meet and confer to discuss consistent production of certain types in color
8  (e.g. PowerPoint presentations, photos, etc.) where those original documents contain color.  The
9  parties are under no obligation to enhance an image beyond how it was kept in the usual course of
10 business.  TIFFs/JPGs will show any and all text and images that would be visible to the reader
11 using the native software that created the document.  For example, TIFFs/JPGs of e-mail messages
12 should include the BCC line.  If the image does not accurately reflect the document as it was kept
13 in the usual course of business, including all comments, edits, tracking, etc., the parties agree to
14 meet and confer in good faith on production format options.

15       If a document is produced in native format, a single-page Bates stamped image slip sheet
16 stating the document has been produced in native format should be provided, with the exception
17 of PowerPoint presentations.  PowerPoint documents should be produced in native format along
18 with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.
19 Each native file should be named according to the Bates number it has been assigned and should
20 be linked directly to its corresponding record in the load file using the NATIVELINK field.  To
21 the extent that either party believes that specific documents or classes of documents, not already
22 identified within this protocol, should be produced in native format, the parties agree to meet and
23 confer in good faith.

24       **B.      De-Duplication**

25       Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values,
26 at the family level.  Attachments should not be eliminated as duplicates for purposes of production,
27 unless the parent e-mail and all attachments are also duplicates.  The parties agree that an e-mail
28 that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an

e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. The use of email threading to limit the review of documents to "inclusive" email families is acceptable, however, every responsive email that is part of an email thread will be produced separately, including the responsive emails that are not inclusive and that may not have been separately reviewed. Inclusive emails refer to an email that contains unique content not included in any other email, and thus, must be reviewed. An email with no replies or forwards is inclusive by this definition. The last email in a thread is inclusive by this definition. An email anywhere in the thread containing unique attachment(s) is inclusive by this definition. The application of an email threading must include the entire document population with Search Terms hits including families. Where any inclusive email is withheld due to privilege, all efforts must be made to review and produce any non-inclusive, earlier-in-time emails from within the same email thread to ensure all non-privileged communications are produced. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### C.     Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in **Table 1**, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than e-mail and e-docs that do not conform to the metadata listed in **Table 1**, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

### D.     Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked

with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents.

### E. Attachments

The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, and that if any part of an e-mail or its attachments is privileged, the entire e-mail and attachments will be redacted where appropriate or withheld on the basis of privilege pursuant to a case-by-case privilege analysis.  The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. Where feasible, the attachments will be produced sequentially after the parent e-mail.

The parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc.  Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

### F. Compressed Files Types

Compressed file types (*e.g*., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production.  The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

### H. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 4:19-cv-02562-WHO   - 6 -

**I.     Redactions**

If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**V.     DOCUMENTS PROTECTED FROM DISCOVERY.**

**A.**     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.  Once a document is used in the litigation (*e.g.* used in a deposition, briefing, expert reports), the producing party must notify the receiving party of its intention to claw back a privileged document within twenty-one (21) days of use or the protection of Rule 502(d) is lost as to that document.

**B.**     Communications involving in-house litigation counsel and trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

**VI.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED through Counsel of Record

AGREED TO BY:

DATED: July 14, 2020

ROBBINS GELLER RUDMAN
 & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
DOROTHY P. ANTULLIS (*pro hac vice*)
BRADLEY M. BEALL (*pro hac vice*)

_____
Stuart A. Davidson

| | |
|---|---|
| 1 | |
| 2 | 120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL  33432 |
| 3 | Telephone:  561/750-3000<br>561/750-3364 (fax) |
| 4 | sdavidson@rgrdlaw.com<br>cgold@rgrdlaw.com |
| 5 | dantullis@rgrdlaw.com<br>bbeall@rgrdlaw.com |
| 6 | BONNETT, FAIRBOURN, FRIEDMAN<br>    & BALINT, P.C. |
| 7 | PATRICIA N. SYVERSON (203111)<br>600 W. Broadway, Suite 900 |
| 8 | San Diego, CA  92101<br>Telephone:  619/798-4593 |
| 9 | psyverson@bffb.com |
| 10 | BONNETT, FAIRBOURN, FRIEDMAN<br>    & BALINT, P.C. |
| 11 | Elaine A. Ryan (*pro hac vice*) |
| 12 | Carrie A. Laliberte (*pro hac vice*)<br>2325 E. Camelback Rd., Suite 300 |
| 13 | Phoenix, AZ  85016<br>Telephone:  602/274-1100 |
| 14 | eryan@bffb.com<br>claliberte@bffb.com |
| 15 | |
| 16 | GOLDMAN SCARLATO & PENNY P.C.<br>BRIAN D. PENNY (*pro hac vice*) |
| 17 | 8 Tower Bridge, Suite 1025<br>161 Washington Street |
| 18 | Conshohocken, PA  19428<br>Telephone:  484/342-0700 |
| 19 | penny@lawgsp.com |
| 20 | ZAREMBA BROWN PLLC<br>BRIAN M. BROWN (*pro hac vice*) |
| 21 | 40 Wall Street, 52nd Floor<br>New York, NY  10005 |
| 22 | Telephone:  212/380-6700<br>bbrown@zarembabrown.com |
| 23 | Attorneys for Plaintiffs |
| 24 | |
| 25 | DATED:  July 14, 2020         PARKS & SOLAR, LLP<br>                                                  ROBERT J. PARKS |
| 26 | |
| 27 | |
| 28 |                                                  Robert J. Parks |

STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 4:19-cv-02562-WHO          - 8 -

| | |
|---|---|
| 1 | |
| 2 | 501 West Broadway, Suite 1540<br>San Diego, CA  92101<br>Telephone:  619/501-2700 |
| 3 | rparks@parksandsolar.com |
| 4 | VENABLE, LLP |
| 5 | WILLIAM M. SLOAN<br>101 California Street, Suite 3800 |
| 6 | San Francisco, CA  94111<br>Telephone: 415/653-3750 |
| 7 | WMSloan@venable.com |
| 8 | Attorneys for Defendant |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____    _____
                                       Hon. William H. Orrick
                                       United States District Judge

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/… | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT |  | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE |  | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH |  | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX |  | ID used to tie together e-mail threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE**: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.