1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    ROXANE A. POLIDORA (CA Bar No. 135972)
2   roxane.polidora@pillsburylaw.com
    LEE BRAND (CA Bar No. 287110)
3   lee.brand@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
4   San Francisco, CA  94111
    Telephone: (415) 983-1000
5   Facsimile: (415) 983-1200

6   *Attorneys for Defendant StarKist Co.*

7   [Additional counsel appear on signature page.]

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12  WARREN GARDNER, et al.,              Case No. 3:19-cv-02561-WHO

                    Plaintiffs,          **JOINT DISCOVERY DISPUTE**
13                                        **STATEMENT REGARDING**
          v.                              **PLAINTIFF DEPOSITIONS**
14
    STARKIST CO.,                         Hon. William H. Orrick
15
                    Defendant.
16
    _____
17  TARA DUGGAN, et al.,                 Case No. 3:19-cv-02562-WHO

18                  Plaintiffs,

19        v.

20  TRI-UNION SEAFOODS, LLC,

21                  Defendant.
    _____
22

23

24

25

26

27

28

1    Pursuant to the Court's Standing Order for Civil Cases, the parties respectfully

2   submit the following Joint Discovery Dispute Statement and request that the Court enter the

3   accompanying Proposed Order.  The parties' sole dispute is whether the Court should adopt

4   Defendants' or Plaintiffs' version of paragraph 2 of the Proposed Order.

5   **Plaintiffs' Statement**

6    *Gardner v. StarKist Co.*, No. 3:19-cv-02561-WHO ("*Gardner*") and *Duggan v. Tri-*

7   *Union Seafoods, LLC, dba Chicken of the Sea Int'l, Inc.*, No. 3:19-cv-02562-WHO

8   ("*Duggan*") were deemed related on December 9, 2019 (*Gardner*, Dkt. No. 72), but those

9   cases have never been coordinated, consolidated, or otherwise joined for any purpose.

10  Twenty-one (21) Plaintiffs sued StarKist in *Gardner*.  Sixteen (16) Plaintiffs sued Chicken

11  of the Sea ("COSI") in *Duggan*.  Among the two cases, there are twenty-four (24) unique

12  Plaintiffs, thirteen (13) of whom sued both Defendants.  The Parties dispute centers around

13  the eleven (11) "Non-Crossover Plaintiffs"[1] that sued only StarKist or COSI, but not both.

14    By way of background, the Parties have been negotiating a stipulation to allow

15  defense counsel in both Actions to coordinate the depositions of the thirteen "crossover"

16  Plaintiffs.  Defendants, however, have demanded that they also be permitted to attend and

17  individually question each of the eleven Non-Crossover Plaintiffs that have sued only one of

18  the Defendants. While Plaintiffs agree that coordinating the depositions of the crossover

19  Plaintiffs promotes efficiency, those gains do not justify Defendants' demand to also depose

20  Plaintiffs that did not sue their client and who will not otherwise participate in the other case.

21    To be sure, Plaintiffs' Counsel has no intention of using the Non-Crossover Plaintiffs

22  as witnesses in the other litigation, in part because most did not even purchase the tuna

23  products of the other Defendant.  Absent a stipulation by Defense Counsel in both cases that

24  the Parties may treat StarKist's and COSI's dolphin safe promises as identical (meaning, for

25  example, that either Defendant's internal documents assessing the materiality of their dolphin

26

27  [1]  The Non-Crossover Plaintiffs are: Warren Gardner, Tara Duggan, Autumn Hessong,
     Heather Meyers, Kathleen Miller, Amar Mody, Heena Mody, Rachel Pedraza, Jason
28  Petrin, Amy Taylor, and Tara Trojano.

1    safe promises or advertising can be applied with equal force to the other Defendant, or that a

2    survey of consumers regarding either Defendant's packaging and advertising can be applied

3    equally to both cases), then there is no basis to Defendants' argument that the testimony of a

4    StarKist consumer is relevant to issues in the COSI litigation.  And though the Parties have

5    met and conferred on this issue, neither Defendant has yet offered any explanation of how

6    the testimony of the Non-Crossover Plaintiffs would be relevant to their case, much less how

7    their testimony is necessary.

8           Even *if* some of these Non-Crossover Plaintiffs *had* purchased the tuna sold by the

9    other manufacturer that they did not sue, there is no legal basis to permit their depositions,

10   even as absent class members.  "Absent class members are not ordinarily required to submit

11   to discovery….."  *See Tierno v. Rite Aid Corp*., 2008 WL 2705089, at *6 (N.D. Cal. July 8,

12   2008).  Indeed, such discovery has only been permitted in limited circumstances, such as

13   "where the information sought is relevant, not readily obtainable from the representative

14   parties or other sources, and the request is not unduly burdensome and made in good faith."

15   *Id.*  "Applying these principles, courts have found the burden on the defendant to justify

16   discovery of absent class members by means of deposition is particularly heavy."  *See*, *Cornn*

17   *v. United Parcel Service, Inc.*, 2006 WL 2642540, *2 (N.D. Cal. Sept. 14, 2006).  Defendants

18   cannot meet this burden, in part because they cannot show the information they seek is not

19   readily obtainable from the representative parties themselves.

20          StarKist has twenty-one (21) Plaintiffs that sued them to depose and COSI has sixteen

21   (16).  Neither Defendant has sought leave of Court to exceed the 10 deposition limit in Fed.

22   R. Civ. Pro 30(a)(2), nor have they asked Plaintiffs to stipulate to any number of depositions

23   that would exceed that limit.  From the stable of Plaintiffs that actually sued each Defendant,

24   there is ample opportunity to discover information relevant to consumer class members for

25   class certification purposes.  There is no need for each Defendant to depose eleven *more* tuna

26   consumers, particularly those that did not purchase their client's tuna.

27          Perhaps more importantly, the Non-Crossover Plaintiffs have not "injected"

28   themselves into the other litigation in any way.  For example, courts sometimes permit a

1    defendant to depose an absent class member where plaintiff's counsel has identified those

2    absent class members as potential witnesses, or where they submitted factual declarations to

3    be used in the case.  That is simply not the case here.  *Cf. Moreno v. Autozone, Inc.*, 2007 WL

4    2288165, at *1 (N.D. Cal. Aug. 3, 2007) (noting "[d]iscovery of absent class members is

5    generally not allowed" but permitting depositions "only of those absent class members who

6    have injected themselves into the class certification motion by filing factual declarations");

7    *Brown v. Wal-Mart Store, Inc.*, 2018 WL 339080, at *1-2 (N.D. Cal, Jan. 9, 2018) (finding

8    defendant had "met its burden to take the depositions of the eight absent class members"

9    where plaintiffs' counsel had identified those individuals as potential witnesses in their pre-

10   trial disclosures and thus had "injected" them into the litigation.)  Defendants' argument that

11   the Non-Crossover Plaintiffs have "injected" themselves into the other litigation merely by

12   suing their case alongside *other Plaintiffs* that have injected themselves strains the bounds of

13   reason.

14        The inquiry here is not a balancing test between need and burden.  Defendants have

15   a "heavy burden" to demonstrate these depositions are warranted and necessary.  They have

16   not carried that burden.

17   **Defendants' Statement**

18        On May 13, 2019, Plaintiffs' counsel filed purported class actions against the three

19   leading U.S. tuna brands—StarKist, COSI, and Bumble Bee.[2]  All three suits allege that tuna

20   products are labeled as, but not actually, "Dolphin Safe."  Eleven named plaintiffs overlap

21   between all three actions and thirteen overlap between these *Gardner* and *Duggan* actions.

22   Four of the eleven Non-Crossover Plaintiffs ("NCPs") also sued Bumble Bee.  Given the

23   overlap in Plaintiffs and subject matter, Defendants informed Plaintiffs that they planned to

24   minimize the burdens for all parties by cross-noticing Plaintiff depositions, including NCP

25   depositions, so that Plaintiffs would only need to be deposed once.  Plaintiffs refused to agree

26   to joint NCP depositions, first based on a presumption against absent class member discovery

27   _____

28   [2]  *Duggan v. Bumble Bee Foods LLC*, No. 4:19-cv-02564-JSW, has been subject to a
     bankruptcy stay since November 2019 and was never formally related to the other cases.

1   and now also arguing that certain unspecified NCPs are not absent class members.  Both

2   arguments miss the point that the NCPs are all percipient witnesses who allege that they were

3   misled by the same "Dolphin Safe" labeling employed across the U.S. tuna industry.

4          Plaintiffs' reliance on cases regarding "absent class member" discovery is misplaced.

5   The non-party Defendants have every right to depose the NCPs under the plain language of

6   Rules 26 and 30, regardless of their status as "absent class members."  Because this litigation

7   involves related actions based on the same allegation (*i.e.*, that the words "dolphin safe" on

8   packaged tuna are misleading to consumers), the testimony of the NCPs is highly relevant to

9   class certification issues in both actions.  And, unlike typical "absent class member"

10  discovery, the depositions at issue here will occur either way.  Moreover, the NCPs are

11  represented by the same counsel in both actions, and the non-party Defendants have agreed

12  to ask only non-duplicative questions while staying within Rule 30's single deposition time

13  limit.  Indeed, Plaintiffs' argument that this is impermissible because some of the NCPs are

14  not absent class members (and their failure to identify which are or are not) reflects their

15  ongoing strategy to treat these cases as related when it suits their needs (*e.g.*, insisting on a

16  common due date for class certification motions so that one Defendant does not get a preview,

17  and the stipulation demand added at the eleventh hour to their statement above), but objecting

18  to such treatment when they find it detrimental (*e.g.*, refusing to produce the same documents

19  to both Defendants, and serving third-party subpoenas relevant to both actions exclusively in

20  one action with no notice to the other Defendant).

21          To the extent the Court does view this as a request for "absent class member"

22  discovery, the result is no different.  District courts in the Ninth Circuit have "discretion to

23  allow limited discovery from absent class members if the particular circumstances of a

24  specific case justify it."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 n.10 (9th Cir.

25  2017).  As reflected in Plaintiffs' cases, "the rules pertaining to [absent class member]

26  discovery are flexible, especially where the proposed deponents have been identified as

27  potential witnesses or have otherwise 'injected' themselves into the litigation," *Brown*, 2018

28  WL 339080, at *1; and "such discovery may be taken even prior to certification if the

1   proponent of the deposition demonstrates discovery is not sought to take undue advantage of

2   class members or to harass class members, and is necessary to . . . preparation of the

3   opposition to class certification," *Moreno*, 2007 WL 2288165, at *1; *see also A.B. v. Pac.*

4   *Fertility Ctr.*, 2019 WL 6605883, at *1 (N.D. Cal. Dec. 3, 2019) (recognizing propriety of a

5   deposition where "the absent class member was a percipient witness").

6       Plaintiffs' assertion that the NCPs have not injected themselves into the related cases

7   is incorrect.  While the NCPs may not have technically sued both Defendants, all Plaintiffs

8   were willing participants in parallel, counsel-coordinated class actions alleging common

9   misrepresentations.  In these "particular circumstances," the NCPs have injected themselves

10  far more than absent class members found properly subject to discovery based on initial

11  disclosures or declarations. *See, e.g.*, *Brown*, 2018 WL 339080, at *1; *Mas v. Cumulus Media*

12  *Inc.*, 2010 WL 4916402, at *3 (N.D. Cal. Nov. 22, 2010); *Moreno*, 2007 WL 2288165, at *1.

13      Plaintiffs' argument regarding relevance is wrong as a matter of law: "nearly every

14  absent class member potentially possesses information relevant to certification."  *Pac.*

15  *Fertility Ctr.*, 2019 WL 6605883, at *1 (authorizing interrogatories to former named

16  plaintiffs).  This is especially true here, where Plaintiffs have articulated identical arguments

17  for predominance and commonality in the related actions. *Compare Gardner* SAC (Dkt. 75)

18  ¶¶ 151, 158; *with Duggan* SAC (Dkt. 54) ¶¶ 106, 113.

19      Plaintiffs' contention that such discovery is unnecessary reflects an attempt to

20  supplant their judgment for Defendants' regarding which depositions will best facilitate the

21  preparation of oppositions to class certification.  Defendants do not presently intend to exceed

22  Rule 30's ten deposition limit, so the issue is purely which Plaintiffs will be deposed, not

23  how many.  In fact, by agreeing to depose Plaintiffs once rather than twice, Defendants have

24  drastically reduced the number of depositions in these actions.  In this context, there is no

25  basis under rule or law to prohibit both Defendants from deposing NCPs who have alleged

26  they were deceived by "dolphin safe" labeling, whose testimony will thus bear on key class

27  certification issues in both actions, and who will face no meaningful burden from an

28  additional Defendant's limited participation in their depositions.

1      Dated:  July 8, 2021

2                         PILLSBURY WINTHROP SHAW PITTMAN LLP
                          ROXANE A. POLIDORA

3                         LEE BRAND
                          Four Embarcadero Center, 22nd Floor

4                         San Francisco, CA  94111

5

6                         By:          */s/ Roxane A. Polidora*
                                 Roxane A. Polidora

7                         *Attorneys for Defendant StarKist Co.*

8

9                         VENABLE, LLP
                          STEVEN E. SWANEY

10                        101 California Street, Suite 3800
                          San Francisco, CA 94111

11                        SESwaney@Venable.com
                          Telephone: (415) 653.3735

12

13                         By:          */s/ Steven E. Swaney*
                                 Steven E. Swaney

14

15                         *Attorneys for Defendant Tri-Union Seafoods, LLC,*
                        *dba Chicken of the Sea International, Inc.*

16

17

18                        BONNETT, FAIRBOURN, FRIEDMAN
                       & BALINT, P.C.

19                        PATRICIA N. SYVERSON
                       600 W. Broadway, Suite 900

20                        San Diego, California 92101
                       psyverson@bffb.com

21                        Telephone: (619) 798-4593

22                         By:          */s/ Patricia N. Syverson*
                                Patricia N. Syverson

23                         *Attorneys for Plaintiffs*

24

25

26

27

28

JOINT DISCOVERY DISPUTE STATEMENT RE PLAINTIFF DEPOSITIONS
Case Nos. 3:19-cv-02561-WHO; 3:19-cv-02562-WHO

1

## <u>ATTESTATION STATEMENT</u>

2          Pursuant to Civil L.R. 5-1(i)(3), I attest that the other signatories listed, and on

3   whose behalf the filing is submitted, concur in the filing's content and have authorized the

4   filing.

5          Dated:  July 8, 2021

6                                                             <u>*/s/ Roxane Polidora*</u>
                                                                Roxane Polidora
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28